### STATE OF CONNECTICUT *v.* JOSE LOPEZ
### (12274)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and CALLAHAN, Js.

Argued May 1—decision released September 3, 1985

*Daniel V. Presnick,* for the appellant (defendant).

*John A. Connelly,* state's attorney, with whom, on the brief, was *Catherine J. Capuano,* deputy assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, Jose Lopez, pleaded guilty to a charge of murder, in violation of General Statutes § 53a-54a, on April 18, 1983.[1] Before accept-

[1] "[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under

ing the defendant's plea, the trial court did a searching canvass, concluded that there was a factual basis for the charge and that the plea was voluntary. Subsequent to the plea, but prior to sentencing, the defendant retained other counsel and filed a motion to withdraw his guilty plea. The motion was based on a claim that "[t]he plea was involuntary, or was entered without knowledge of the nature of the charge," and that it "resulted from the denial of effective assistance of counsel." The trial court denied the motion to withdraw the plea after an extensive hearing and imposed a sentence of twenty-five years imprisonment. The defendant appeals, claiming that the trial court erred in: (1) finding that the defendant's guilty plea was knowing, intelligent and voluntary and made with the effective assistance of counsel; (2) considering the strength of the state's case and the probable outcome of a trial in its decision as to whether the defendant was denied the effective assistance of counsel; (3) failing adequately to inform the defendant of the nature of the charge against him and of his right against self-incrimination prior to accepting his guilty plea; (4) becoming an active participant in the plea bargaining process by allegedly holding a "secret pretrial conference" from which the defendant and the public were unconstitutionally excluded; (5) refusing to dismiss the

---

this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person.

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a unless it is a capital felony."

charges for lack of a probable cause hearing; (6) denying the defendant's motion to disqualify the court on sentencing; (7) ruling that it lacked the authority to suspend a portion of the sentence; and (8) denying his motion for a waiver of fees, costs and expenses. The defendant also challenges the plea bargaining procedure on constitutional grounds.

The underlying facts of the crime leading to the defendant's guilty plea are as follows: On August 28, 1982, the defendant attended a birthday party for his daughter, held at the home of the child's mother in Waterbury. During the party, an argument occurred in which both the defendant and Juan Ortiz, the new boyfriend of the mother of the defendant's child, became involved. The defendant left the party and drove to his apartment, where he retrieved a shotgun and a box of shotgun shells. He returned to the party and confronted Juan Ortiz. The two men fought, and the defendant fired his gun, intending to hit Ortiz, but instead fatally shooting Sergio Torrez, who was standing nearby. The defendant fled from the house, and was apprehended by the police en route to Hartford later that night. The following morning, August 29, 1982, the defendant, having been fully advised of his *Miranda* rights, gave a signed statement to the Waterbury police recounting the events of the previous night.

On October 5, 1982, the defendant was indicted for the crime of murder, in violation of General Statutes § 53a-54a. The defendant retained counsel and initially entered a plea of not guilty. On April 18, 1983, after assurances from the state that the minimum sentence would be recommended, the defendant withdrew his original plea and entered a plea of guilty to the charged offense. The trial court conducted "a typical searching canvass which included a detailed description of the nature of the charge" and, after finding "that there

was a factual basis for the charge and that the plea was voluntary," accepted the defendant's guilty plea.

On May 20, 1983, the date on which sentencing was scheduled to take place, the defendant appeared with new counsel and filed a motion to withdraw his guilty plea, claiming that "[t]he plea was involuntary, or was entered without knowledge of the nature of the charge," and that it "resulted from the denial of effective assistance of counsel." After an evidentiary hearing, the trial court denied the defendant's motion to withdraw his guilty plea and sentenced him to twenty-five years imprisonment.

I

The defendant's primary claim on appeal is that the trial court erred in accepting his guilty plea and in denying his motion to withdraw that plea. He claims that the plea was involuntary, entered without knowledge of the nature of the charge against him and resulted from ineffective assistance of counsel.

A guilty plea that is not both voluntary and knowing is in violation of due process and thus void. *McCarthy* v. *United States,* 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969); *State* v. *Marra,* 174 Conn. 338, 340, 387 A.2d 550 (1978); *State* v. *Battle,* 170 Conn. 469, 473, 365 A.2d 1100 (1976). For a guilty plea to be truly voluntary, the defendant must understand the law in relation to the facts. *McCarthy* v. *United States,* supra, 466. Because a defendant waives several constitutional rights when he elects to plead guilty to a criminal offense, the choice of a guilty plea is of profound significance. *Boykin* v. *Alabama,* 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *State* v. *Childree,* 189 Conn. 114, 120, 454 A.2d 1274 (1983). In pleading guilty, a defendant waives his privilege against compulsory self-incrimination, his right to trial by jury and his right to confront his accusers. Practice

Book § 711 (5); *Boykin* v. *Alabama,* supra; *McCarthy* v. *United States,* supra; *State* v. *Childree,* supra. A guilty plea is therefore constitutionally valid only if the record affirmatively discloses that the plea was entered voluntarily and intelligently. *Boykin* v. *Alabama,* supra, 242; *State* v. *Marra,* supra; *Blue* v. *Robinson,* 173 Conn. 360, 373, 377 A.2d 1108 (1977).

A

The defendant first claims that his guilty plea resulted from the denial of the effective assistance of counsel. Specifically, he asserts that his counsel should have questioned him about his intent at the time of the crime and should have informed him of the possibility of conviction of the lesser included offense of manslaughter if he lacked the requisite intent for murder. The defendant maintains that his counsel's failure so to question and inform him resulted in a plea which was not voluntary.

A defendant must satisfy two requirements in order to prevail on a claim that his guilty plea resulted from ineffective assistance of counsel. *Myers* v. *Manson,* 192 Conn. 383, 393, 472 A.2d 759 (1984). First, he must prove that the assistance was not " 'within the range of competence displayed by lawyers with ordinary training and skill in the criminal law'; *State* v. *Clark,* 170 Conn. 273, 283, 365 A.2d 1167, cert. denied, 425 U.S. 962, 96 S. Ct. 1748, 48 L. Ed. 2d 208 (1976), quoting *Gentry* v. *Warden,* 167 Conn. 639, 646, 356 A.2d 902 (1975) . . . ." *Myers* v. *Manson,* supra, 393. Second, there must exist " 'such an interrelationship between the ineffective assistance of counsel and the guilty plea that it can be said that the plea was not voluntary and intelligent because of the ineffective assistance. *Dukes* v. *Warden,* 161 Conn. 337, 344, 288 A.2d 58 (1971), aff'd, 406 U.S. 250, 92 S. Ct. 1551, 32 L. Ed. 2d 45, reh. denied, 407 U.S. 934, 92 S. Ct. 2464, 32 L. Ed. 2d 817 (1972).' " *Myers* v. *Manson,* supra, 393–94.

In the present case, the defendant is unable to meet even the first of these two requirements. The record indicates that the defendant's original attorney adequately investigated the case and informed the defendant of the charge against him and the likelihood of a murder conviction. At the hearing on his motion to withdraw his guilty plea, the defendant admitted that his counsel had told him of the possibility of conviction of manslaughter in some degree, but that "the probability of such a disposition was highly unlikely."

It is within the range of reasonably competent counsel for an attorney to advise his client to plead guilty even though defenses may conceivably exist. *Parker v. North Carolina,* 397 U.S. 790, 797–98, 90 S. Ct. 1458, 25 L. Ed. 2d 785 (1970); *McMann v. Richardson,* 397 U.S. 759, 770, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970); *Jones v. Estelle,* 584 F.2d 687 (5th Cir. 1978); *Herring v. Estelle,* 491 F.2d 125, 128 (5th Cir. 1974). Here, the defendant had signed a voluntary statement that he had left the party in anger, driven to his home, retrieved a gun and ammunition, and returned to the party where he fired the shot that killed the victim. It was thus highly unlikely in this case that the defendant could successfully claim a lack of intent to reduce his conviction from murder to manslaughter. Based on this record, the advice which the defendant received was well within the range of competence required of attorneys representing clients in criminal cases.

B

The defendant claims that the trial court, in denying his motion to withdraw his guilty plea, should not have considered the strength of the state's case and the probable outcome were the case to go to trial. In his brief, he characterizes the court's ruling as improperly resting on "[t]he court's opinion [as to] the guilt or innocence of [the] accused." This characterization,

however, is inaccurate. The defendant's motion to withdraw his plea was largely premised on his assertion that the plea resulted from the ineffective assistance of counsel. As on appeal, the defendant's claim on the motion to withdraw was essentially that he had not been adequately informed of the possibility of a manslaughter conviction. In evaluating this claim, the trial court properly examined the strength of the state's case against the defendant in order to determine whether the defendant's counsel had acted competently in advising him to plead guilty. *McMann* v. *Richardson,* supra, 770–71; *Myers* v. *Manson,* supra, 394. The court reviewed the defendant's voluntary statement to the police, as well as the probable testimony of a number of eyewitnesses, and found that "there was overwhelming evidence as to every element of murder and nothing whatsoever to support any claim of extreme emotional disturbance." This finding was not, as the defendant contends, an expression of the court's opinion as to the defendant's guilt or innocence. Rather, it reflected the court's assessment of the likely outcome of trial, which was necessary to evaluate the defendant's claim of ineffective assistance of counsel. The trial court's analysis and ruling were entirely proper in the context of the defendant's claim.

## II

The defendant next asserts that the trial court, in accepting his guilty plea, failed adequately to inform him of the nature of the charge against him, as required by Practice Book § 711 (1).[2] In support of this claim,

---

[2] "[Practice Book] Sec. 711. —— ——ADVICE TO DEFENDANT

"The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge, including, if there

he alleges that the court did not instruct him on the mens rea element of murder, and challenges the court's explanations regarding the state's burden of proof and the affirmative defense of extreme emotional disturbance.

Practice Book § 711 was designed to ensure that guilty pleas are made voluntarily and with full knowledge of the waiver of specific constitutional rights. *State v. Suggs*, 194 Conn. 223, 226, 478 A.2d 1008 (1984); *State v. Godek*, 182 Conn. 353, 357, 438 A.2d 114 (1980), cert. denied, 450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981). The record in this case establishes that the canvass by the trial court, prior to the acceptance of the defendant's guilty plea, met the requirements of Practice Book § 711. The defendant was correctly informed that "the State is held to a very, very high standard of proof. Any reasonable doubt must be resolved in your favor." Thereafter, the court quoted the statutory definition of murder contained in General Statutes § 53a-54a, and explained its meaning to the defendant. Included in the court's explanation was the intent element of the offense, followed by a discussion of the affirmative defense of extreme emotional disturbance. The court then proceeded to inform the defendant of the possible sentences for the offense charged, and the effect of a guilty plea, as opposed to a conviction after trial, with regard to his sentence.[3]

---

are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he has the right to be tried by a jury or a judge and that at that trial he has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself."

[3] The court's explanations to the defendant regarding the charged offense, the potentially applicable affirmative defense and the consequences of his decision to plead guilty were as follows:

"Now, when you're offering this plea—it is to a crime of murder. I'll read

At that point, the court asked the defendant, "Do you understand?" and the defendant responded in the affirmative.

" '[W]here there has been a substantial compliance with [§ 711], such that none of the defendant's constitutionally protected rights has been infringed upon, the failure to comply with each and every requirement of [§ 711] does not automatically require the vacating of the defendant's plea.' *State* v. *Godek,* supra, 360." *State* v. *Suggs,* supra, 227. Under the circumstances of this case, the trial court's explanations to the defendant regarding the charged offense of murder, the affirma-

the statute. A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or a third person. In other words, the State would have to prove that you caused the death of this victim and that you intended to kill someone, not necessarily the person who was actually killed.

"I want to point out to you what is called an affirmative defense. That you acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from your viewpoint in the situation which existed or as you reasonably believe them [sic] to be. If you were able to prove such extreme emotional disturbance, that would not mean that you would get off scot-free; it would mean that the charge would be reduced to what's called manslaughter in the first degree, the punishment of which is somewhat less than murder. I want to point out to you that on the charge of murder the minimum sentence under the statute is twenty-five years, the maximum is life, which is defined by the statute as being sixty years. In other words, if you were to go on trial and you were to be convicted, you could get anywhere from twenty-five years as a minimum to life which means sixty years as a maximum. I want you to understand this. I have already made a representation to your attorney, and I believe he has informed you of it, that my present intention is, at the time of sentencing, that I would impose the minimum sentence of twenty-five years in return for you having offered a plea of guilty. I did point out to your attorney that in the event the presentence investigation is very derogatory, I might feel that twenty-five years is insufficient, but in the event that that is my conclusion, at the time of sentencing I will offer you the opportunity to withdraw your plea of guilty and stand trial. On the other hand, if I do accept your plea of guilty today, and after review of the presentence investigation report, I feel at the time of sentencing that twenty-five years is appropriate, the minimum sentence, then, sir, you could not later change your mind and withdraw your plea of guilty without my permission which I do not have to give you."

tive defense of extreme emotional disturbance and the state's burden of proof were entirely adequate to ensure that the defendant fully understood the nature of the charge to which the plea was offered, in accordance with Practice Book § 711 (1).

The defendant also claims that the trial court, prior to accepting his guilty plea, failed to inform him of his right not to be compelled to incriminate himself, as required by Practice Book § 711 (5).[4] The record does not support this claim. After informing the defendant of his right to be tried by a jury or a three-judge panel, the presumption of innocence and the state's burden of proof, and his right to confront the witnesses against him, the trial court stated: "Because you are entitled to the presumption of innocence, it would not be necessary for you to put [on] a defense. If your decision was not to put [on] a defense, that could not be held against you. . . . If you did decide to put [on] a defense . . . you would have the right to make a further decision as to whether or not you yourself would take the stand, and if your decision was not to take the stand, again that cannot be held against you." The court then asked, "Do you realize you're waiving all those rights by offering me this plea of guilty?" to which the defendant replied, "Yes."

Although the court did not specifically tell the defendant that he had "the right not to be compelled to incriminate himself," the substance of that right was adequately conveyed. In *State* v. *Suggs,* supra, 226–28, we considered a defendant's challenge to the voluntariness of his guilty plea on similar grounds. There, the defendant complained that "the trial court's questions of the defendant whether he was waiving his 'right to face your accuser here in the courtroom' were insufficient to advise [him] of his right to confront and cross-

---

[4] See footnote 2, supra.

examine witnesses." Id., 227. We rejected his claim, noting that "a defendant unsophisticated in the law might be better informed of the right to confront witnesses by the use of the more commonly understood term, 'face.' " (Footnote omitted.) Id., 228. Similarly, in this case, the trial court, in explaining to the defendant that he would not have to present a defense or take the stand at trial, and that any decision in that regard would not be held against him, may better have conveyed to the defendant the meaning of the right not to incriminate himself than had it used the exact terminology contained in Practice Book § 711 (5).

### III

In his brief, the defendant asserts that the trial court improperly became an active participant in the plea bargaining process. In support of this claim he alleges that the court "unilaterally and in secret made an offer" in a "secret pretrial conference between the court, the State's Attorney and [defense counsel]," which the defendant was not permitted to attend.

It is fundamental that the party who claims such an error has the burden of establishing its occurrence. *State* v. *Fullwood,* 194 Conn. 573, 581, 484 A.2d 435 (1984); *State* v. *Nash,* 149 Conn. 655, 658–59, 183 A.2d 275, cert. denied, 371 U.S. 868, 83 S. Ct. 130, 9 L. Ed. 2d 104 (1962). In the present case, the defendant has not substantiated his claim of improper participation by the trial court in the plea negotiations. There is nothing in the record to indicate that the defendant was in any way coerced or that his decision to plead guilty was not made of his own free will. Rather, the record demonstrates that the defendant's guilty plea was made knowingly and that he was fully aware of all the consequences of his plea.

Prior to accepting the plea, the court asked the defendant, "Was there any threat made to you to cause

you to decide to plead guilty?" The defendant responded, "No, sir." The court further inquired, "I don't mean by this, do you like it. We all know you don't. But was your decision to plead guilty made of your own free will?" The defendant replied, "Yes, sir." Thus, the record does not support a claim that the defendant did not approve of the negotiated plea, or that the court in any way pressured the defendant into pleading guilty.

The defendant also contends that under our state and federal constitutions, both he and the public had a right to be present at the "secret pretrial conference." The single authority cited by the defendant in support of his claim, however, establishes only that the public has the right to be present at a trial. *Richmond Newspapers, Inc.* v. *Virginia,* 448 U.S. 555, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980). In this case, however, there was no trial because the defendant elected to plead guilty. Although there may have been a disposition conference from which the defendant was excluded, under our established rules of practice neither the defendant nor the public is entitled to attend such a proceeding. In fact, under Practice Book §§ 687 and 688, the prosecutor is not permitted to engage in plea negotiations directly with a defendant who is represented by counsel, except with defense counsel's permission.[5] See also Practice Book § 704. Furthermore, Practice Book § 967

---

[5] "[Practice Book] Sec. 687. ——IN GENERAL

"The prosecuting authority and counsel for the defendant, or the defendant when he is not represented by counsel, may engage in discussions at any time with a view towards disposition. Negotiations may occur either prior to or after the arraignment. The prosecuting authority shall be in his office at reasonable times for the purpose of giving to counsel for the defendant, and to all others in interest, a reasonable opportunity for consultation with him."

"[Practice Book] Sec. 688. ——DISCUSSIONS WITH DEFENDANT

"The prosecuting authority shall not engage in plea discussions at the disposition conference, or at other times, directly with a defendant who is represented by counsel, except with his counsel's approval. If the defend-

does not include the disposition conference or plea negotiations among the specifically enumerated situations where a criminal defendant has the right to be present.[6] Since the defendant does not challenge the constitutionality of these rules of practice, we need not further consider this claim.

## IV

In a related claim, the defendant appears to argue that the plea bargaining was improper because it discouraged the exercise of his constitutional right to plead not guilty and to demand a trial by jury. The defendant's claim is without merit. Both federal and state cases have clearly established that plea bargaining is both desirable and constitutional. *Corbitt* v. *New Jersey,* 439 U.S. 212, 219, 99 S. Ct. 492, 58 L. Ed. 2d 466 (1978); *Bordenkircher* v. *Hayes,* 434 U.S. 357, 361–62, 98 S. Ct. 663, 54 L. Ed. 2d 604, reh. denied, 435 U.S. 918, 98 S. Ct. 1477, 55 L. Ed. 2d 511 (1978); *Staton* v. *Warden,* 175 Conn. 328, 331–33, 398 A.2d 1176 (1978). A guilty plea should not be considered involuntary solely because it is the result of plea bargaining. "It is . . . well settled that plea agreements are consistent with the requirements of voluntariness and intelligence—because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange." *Mabry* v. *Johnson,* 467 U.S.

---

ant refuses to be represented by counsel or waives his right under Sec. 961, the prosecuting authority may properly discuss disposition of the charges directly with the defendant."

[6] "[Practice Book] Sec. 967. ——RIGHT OF PRESENCE

"The defendant has the right to be present at the arraignment, at the time of the plea, at evidentiary hearings, at the trial, and at the sentencing hearing, except as provided in Sec. 966. Whenever present, the defendant shall be seated where he can effectively consult with his counsel and can see and hear the proceedings. An incarcerated defendant or an incarcerated witness shall not be required during the course of a trial to appear in court in the distinctive attire of a prisoner or convict."

504, 508, 104 S. Ct. 2543, 81 L. Ed. 2d 437 (1984). Since, as previously discussed, the defendant's guilty plea was entirely voluntary, his right to plead not guilty was not abridged simply by virtue of the fact that his guilty plea grew out of a plea bargaining arrangement.

The defendant's assertion that the plea bargaining impermissibly infringed on his constitutional right to demand a trial by jury is likewise untenable. "While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.' " *Bordenkircher* v. *Hayes, supra*, 364, quoting *Chaffin* v. *Stynchcombe,* 412 U.S. 17, 31, 93 S. Ct. 1977, 36 L. Ed. 2d 714 (1973). Prior to accepting the defendant's plea, the court specifically informed him that in pleading guilty he was waiving his right to a jury trial, and elaborated on the repercussions of his decision to forego this right. The defendant indicated that he realized he was waiving his right to be tried by offering to plead guilty, and nevertheless proceeded to enter a guilty plea. The defendant's knowing and voluntary waiver of his right to a jury trial precludes his present claim that the plea negotiations deprived him of that right.

V

The defendant next claims that because this case was pending when article first, § 8, of the Connecticut constitution was amended to require a probable cause hearing for those charged with a crime punishable by death or life imprisonment, the trial court should have granted his motion to dismiss the indictment filed against him and held a probable cause hearing.[7] The

---

[7] On October 5, 1982, when the defendant was indicted, article first, § 8, of the Connecticut constitution read as follows:

"In all criminal prosecutions, the accused shall have a right to be heard

defendant argues that while a dismissal of the indictment would not have prevented the state from refiling the charges, it would have vacated his guilty plea. This court has previously considered and decided this issue adverse to the defendant's position. In *State* v. *Sanabria,* 192 Conn. 671, 474 A.2d 760 (1984), we held that although the amendment to article first, § 8, was adopted on November 24, 1982, no defendant who was indicted by a grand jury before the passage of legislation implementing the amendment on May 20, 1983, was entitled to a further pretrial finding of probable cause. Id., 680.

by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by indictment or information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. No person shall be held to answer for any crime, punishable by death or life imprisonment, unless on a presentment or an indictment of a grand jury, except in the armed forces, or in the militia when in actual service in time of war or public danger."

On November 24, 1982, the secretary of the state certified that an amendment to that provision had been approved by the electorate at the general election of November 2, 1982. *State* v. *Sanabria,* 192 Conn. 671, 676, 474 A.2d 760 (1984). Article first, § 8, as amended, currently provides:

"In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. No person shall be held to answer for any crime, punishable by death or life imprisonment, unless upon probable cause shown at a hearing in accordance with procedures prescribed by law, except in the armed forces, or in the militia when in actual service in time of war or public danger."

In the present case, the defendant was indicted by a grand jury for the crime of murder on October 5, 1982. Thus, although his case was pending at the time the amendment was adopted on November 24, 1982, the defendant was indicted prior to that date and therefore was not entitled to a probable cause hearing.

## VI

Prior to sentencing, the defendant filed a motion asking that the trial court determine its authority to "suspend a portion of the minimum sentence as defined under [General Statutes] § 53a-35a." In response, the court ruled that it did not have the authority to suspend a portion of the minimum twenty-five year sentence for murder. On appeal, the defendant claims error in this ruling, maintaining that the trial court had "the inherent equitable powers to suspend a portion of said minimum sentence." The defendant further argues that a mandatory minimum sentence of twenty-five years which could not be suspended or reduced would constitute cruel and unusual punishment. We disagree.

The legislature has the authority to impose a mandatory minimum sentence for a specific crime. *State v. Darden*, 171 Conn. 677, 680, 372 A.2d 99 (1976). A trial court's power to impose a particular sentence is defined by statute, and the constitution does not require that the judiciary be given discretion in sentencing. Id.

The defendant appears to argue that it is unclear whether the legislature intended murder to have a minimum sentence of twenty-five years without suspension. A brief review of our statutory sentencing provisions demonstrates that his argument is without merit. General Statutes § 53a-28 requires that a period of probation or conditional discharge be imposed upon the entire or partial suspension of a sentence.[8] General Statutes

---

[8] "[General Statutes] Sec. 53a-28. AUTHORIZED SENTENCES. (a) Except as provided in chapter 368p, to the extent that such chapter is inconsis-

§ 53a-29 prohibits the imposition of a period of proba-
tion or conditional discharge for a class A felony.[9]
Under General Statutes § 53a-35a, murder is defined

---

tent herewith, every person convicted of an offense shall be sentenced in
accordance with this title.

"(b) Except as provided in sections 53a-45, 53a-46a, 53a-54b and 53a-92,
when a person is convicted of an offense, the court shall impose one of the
following sentences: (1) A term of imprisonment; or (2) a sentence autho-
rized by sections 18-65a or 18-73; or (3) a fine; or (4) a term of imprison-
ment and a fine; or (5) a term of imprisonment, with the execution of such
sentence of imprisonment suspended, entirely or after a period set by the
court, and a period of probation or a period of conditional discharge; or
(6) a term of imprisonment, with the execution of such sentence of imprison-
ment suspended, entirely or after a period set by the court, and a fine and
a period of probation, or a period of conditional discharge; or (7) a fine and
a sentence authorized by section 18-65 or 18-73; or (8) a sentence of uncon-
ditional discharge.

"(c) A sentence to a period of probation or conditional discharge in accord-
ance with sections 53a-29 to 53a-34, inclusive, shall be deemed a revocable
disposition, in that such sentence shall be tentative to the extent that it
may be altered or revoked in accordance with said sections but for all other
purposes it shall be deemed to be a final judgment of conviction."

[9] "[General Statutes] Sec. 53a-29. PROBATION AND CONDITIONAL DIS-
CHARGE: CRITERIA PERIODS. (a) The court may sentence a person to a period
of probation upon conviction of any crime, other than a class A felony, if
it is of the opinion that: (1) Present or extended institutional confinement
of the defendant is not necessary for the protection of the public; (2) the
defendant is in need of guidance, training or assistance which, in his case,
can be effectively administered through probation supervision; and (3) such
disposition is not inconsistent with the ends of justice.

"(b) The court may impose a sentence of conditional discharge for an
offense, other than a class A felony, if it is of the opinion that: (1) Present
or extended institutional confinement of the defendant is not necessary
for the protection of the public; and (2) probation supervision is not appro-
priate.

"(c) When the court imposes a sentence of conditional discharge the
defendant shall be released with respect to the conviction for which the
sentence is imposed but shall be subject, during the period of such condi-
tional discharge, to such conditions as the court may determine. The court
shall impose the period of conditional discharge authorized by subsection
(d) and shall specify, in accordance with section 53a-30, the conditions to
be complied with. When a person is sentenced to a period of probation the
court shall impose the period authorized by subsection (d) and may impose
any conditions authorized by said section 53a-30. When a person is sen-

as a class A felony requiring a mandatory minimum sentence of twenty-five years imprisonment.[10] Thus the trial court was correct in its determination that it lacked the authority to suspend a portion of the minimum twenty-five year sentence.

With regard to the defendant's assertion that a mandatory minimum sentence of twenty-five years imprisonment, without suspension, constitutes cruel and unusual punishment under the eighth amendment

---

tenced to a period of probation, he shall be placed under the supervision of the commission on adult probation.

"(d) The period of probation or conditional discharge, unless terminated sooner as hereinafter provided, shall be as follows: (1) For a felony, not more than five years; (2) for a class A misdemeanor, not more than three years; (3) for a class B misdemeanor, not more than two years; (4) for a class C misdemeanor, not more than one year; and (5) for an unclassified misdemeanor, not more than one year if the authorized sentence of imprisonment is less than three months, or not more than two years if the authorized sentence of imprisonment is in excess of three months, or where the defendant is charged with failure to provide subsistence for dependents, a determinate or indeterminate period."

[10] "[General Statutes] Sec. 53a-35a. IMPRISONMENT FOR ANY FELONY COMMITTED ON OR AFTER JULY 1, 1981: DEFINITE SENTENCES; TERMS AUTHORIZED. For any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence and the term shall be fixed by the court as follows: (1) For a capital felony, a term of life unless a sentence of death is imposed in accordance with section 53a-46a; (2) for the class A felony of murder, a term not less than twenty-five years nor more than life; (3) for a class A felony other than murder, a term not less than ten years nor more than twenty-five years; (4) for a class B felony, a term not less than one year nor more than twenty years, except that for a conviction under section 53a-55a, 53a-59 (a) (1), 53a-59a, 53a-70a, 53a-94a, 53a-101 (a) (1) or 53a-134 (a) (2), the term shall be not less than five years nor more than twenty years; (5) for a class C felony, a term not less than one year nor more than ten years, except that for a conviction under section 53a-56a, the term shall be not less than three years nor more than ten years; (6) for a class D felony, a term not less than one year nor more than five years, except that for a conviction under section 53a-60b, the term shall be not less than two years nor more than five years, and for a conviction under section 53a-60c, the term shall be not less than three years nor more than five years; (7) for an unclassified felony, a term in accordance with the sentence specified in the section of the general statutes that defines the crime."

to the federal constitution, we need only refer to our recent decision in *State* v. *Dupree,* 196 Conn. 655, 665–66, 495 A.2d 691 (1985), where we rejected a similar challenge to the penalty provision of our arson murder statute. As we held in *Dupree,* we cannot conclude that this defendant's sentence "was grossly disproportionate to the nature of the offense involved in this case." Id., 666.

## VII

The defendant next claims that the trial court erred in denying his motion to disqualify the court on sentencing. At the hearing on the motion to disqualify, the defendant argued that because his motion to withdraw his guilty plea was partially based on a claim of ineffective assistance of counsel, his attorney-client privilege had been waived and the court consequently heard "testimony which was basically privileged in nature" and that it was thus "inappropriate . . . for the court to . . . act as a sentencing judge." The defendant wished to be sentenced by a judge who had not heard the privileged testimony. The defendant expressed his intention to request that the sentencing judge suspend the twenty-five year sentence negotiated in the plea bargaining process after the defendant had served ten years.

The trial court denied the defendant's motion to disqualify, stating: "I don't see how there can possibly be any prejudice to [the defendant] if I impose the minimum [sentence] . . . that is the least that any other judge could do. If I were to decide that something more than the minimum [sentence] was appropriate, I have already made it clear [that] I would give him the opportunity to withdraw his plea of guilty and stand trial."

As previously discussed, neither the court that sentenced the defendant, nor any other court, would have been authorized to suspend any portion of the defend-

ant's mandatory minimum twenty-five year sentence for murder. See General Statutes §§ 53a-28, 53a-29 and 53a-35a. The trial court was therefore entirely correct in concluding that, since the defendant could not receive any sentence lesser than that which the court intended to impose, he could in no way be prejudiced by any privileged statements heard by the court incident to his motion to withdraw his guilty plea. The motion to disqualify the trial court on sentencing was thus properly denied.

## VIII

Finally, the defendant claims error in the trial court's denial of his motion for a waiver of fees, costs, surety and expenses "so that he may file an appeal to the Supreme Court." The trial court based its denial of the defendant's motion on the fact that the defendant had retained a private attorney. We decline to decide whether or not the trial court's ruling on this motion was correct. On August 22, 1983, the defendant filed in this court a motion to compel the state to pay his fees and expenses, which we remanded for an indigency hearing in the trial court. The trial court never ruled on the motion, and the defendant withdrew it on December 27, 1984. By withdrawing his motion without ever having made a sufficient showing of indigency in the trial court, the defendant abandoned his claim for a waiver of fees and expenses.

There is no error.

In this opinion the other judges concurred.