STATE OF CONNECTICUT *v.* DONALD K. DEBOBEN

SPEZIALE, C. J., PETERS, PARSKEY, ARMENTANO and SHEA, JS.

Argued May 12—decision released June 29, 1982

*Wayne A. Baker,* for the appellant (defendant).

*Richard D. Arconti,* deputy assistant state's attorney, with whom, on the brief, was *Walter D. Flanagan,* state's attorney, for the appellee (state).

PARSKEY, J.  The defendant entered a plea of guilty to a substitute information charging him with the crime of illegal possession of narcotics with intent to sell.  The trial court, upon inquiry, found that the plea was made knowingly, voluntarily and intelligently and that there was a factual basis for it.  It thereupon entered a finding of guilty to the crime charged.  Thereafter on the day of sentencing the defendant orally moved to withdraw his plea.  The court denied the motion and imposed the recommended sentence from which judgment the defendant has appealed.

The defendant and a co-defendant, Ernesto Luis, had been charged with illegal possession of a narcotic substance with intent to sell, by a non-drug dependent person, in violation of General Statutes § 19-480a (b).  This statute carries a mandatory nonsuspendable minimum sentence of five years. On December 9, 1980, after jury selection and pursuant to a plea agreement, the defendant and his co-defendant[1] entered pleas of guilty to a substituted information charging them with possession of a narcotic substance with intent to sell in violation of General Statutes § 19-480 (a).  This statute contains a maximum sentence of fifteen years but no mandatory minimum.  In the defendant's case the state agreed to recommend, and the court later imposed, a sentence to the correctional institution at Cheshire for an indefinite period not to exceed five years.

[1] Luis also pled guilty to a charge of possession of a controlled substance with intent to sell.  General Statutes § 19-480 (b).

At the time of the plea, the assistant state's attorney told the court that on March 28, 1980, the Danbury police executed a search and seizure warrant at the residence of the co-defendant Luis, that Luis and the defendant were in a bedroom behind a closed door, that the defendant was observed sitting on the bed with a knife cutting on a mirror a white substance later determined to be three grams of cocaine, that a mixing substance known as mannitol was next to the cocaine, that the bedroom contained various drug paraphernalia including scales and packaging materials, that known drug users were observed elsewhere in the apartment and that while the police were present the phone rang twice and the callers told the detective who answered that they wanted to talk to Ernesto and to "cop some snow" (meaning cocaine).

The court then explained the elements and penalties of the offense to the defendant. With respect to the elements of possession the court explained the concepts of actual and constructive possession and related these concepts to the facts it had just heard. With regard to the element of intent to sell the court explained to the defendant that his actual possession of the cocaine, his cutting of it and the presence of packaging devices in the area were evidence of intent to sell. After having explained the elements the court observed that unless all of these elements, viz., knowing possession, narcotic substance, and intent to sell, are present the statute is not violated, and that if during its inquiry the court determined that one of these elements was missing, it would not accept the plea.

The court further explained to the defendant his various constitutional rights, including his right to a jury, to a speedy and public trial, to remain

silent, to confront the witnesses against him and to the presumption of innocence. Upon specific inquiry by the court the defendant responded that he understood the elements of the crime charged. When asked whether he had any questions about the elements of the crime charged, he responded, "[n]o." When asked whether he understood that by pleading guilty he was admitting all of the elements of the crime charged and was giving up his constitutional rights as previously explained, he responded, "[y]es."

Thereafter, the court inquired as to the voluntariness of the plea. In response to the court's questions, the defendant stated that he had not been promised anything or threatened with anything in order to get him to enter the plea, that he had discussed the plea in great detail with his attorney, that he had considered his attorney's advice as well as his own good judgment and the advice of other people before entering his plea and that he was satisfied with his attorney's services.

The court concluded its canvass of the plea by asking the defendant to tell what he did in his own words. The defendant told the court that he was sitting in Luis' bedroom, holding the bag of marijuana. He then was asked about the cocaine. At first, he stated that he had "nothing to do with it," but later stated that it was next to him and that he knew what it was. When the court inquired if he knew it was going to be sold he initially responded that he didn't have any idea what was going to be done with it. The defendant then conferred with his lawyer and shortly thereafter when asked by the court what he and Luis were going to do with the cocaine, answered, "Sell it." The court then repeated, "You were going to sell it."

Upon the conclusion of the canvass the court remarked: "Gentlemen, I've told you what the elements of the crime are, told you what your rights are. You've indicated you understand what the elements are; what your rights are and that you have no questions about what I've explained to you, that you're satisfied with your Attorneys, and you have also told me what you did on the day in question. Even now, at this point, no one is forcing you to plead guilty. If you would like to withdraw your pleas, you may. If you would like them to stand, they may, so long as you understand what you're doing, and I have to be so satisfied.

"After explaining your rights to you, Mr. Luis, do you wish your pleas of guilty to stand on these two charges?

"Mr. Luis: Yes.

"The Court: Mr. Deboben?

"Mr. Deboben: Yes."

On the day of sentencing the defendant moved to withdraw his plea on the ground that he was confused when he entered the plea and that he said what his attorney[2] told him to say. He did not specify in what respect he was confused nor did he claim that his attorney advised him to answer the court's questions other than honestly and truthfully. Although he claimed that he was not cutting the cocaine when the police walked in the door and that the cocaine did not belong to him, he told the probation officer who prepared the presentence report that he agreed with the police report. At the sentencing hearing he denied that he admitted to the probation officer that he agreed with this

---

[2] The defendant's trial counsel did not represent him on appeal.

report. On appeal the defendant for the first time also raises the question of the factual basis for the guilty plea.

The defendant makes three claims, namely (1) that he was confused; (2) that he was told what to say by his lawyer; and (3) that there was no factual basis for the plea. The allegations of fact contained in the first two claims are of the conclusory, vague, and oblique variety which we discountenanced in *State* v. *Torres,* 182 Conn. 176, 187, 438 A.2d 46 (1980). Practice Book § 721[3] sets forth the grounds for allowing the withdrawal of an accepted guilty plea. It is not enough for the defendant to claim that he was confused. It is not enough for the defendant to claim that he was told what to say by his lawyer. To warrant consideration, the defendant must allege and provide facts which would justify permitting him to withdraw his plea under § 721. In this respect the defendant's change of mind will not qualify.

---

[3] Practice Book § 721 provides: "——GROUNDS

The grounds for allowing the defendant to withdraw his plea of guilty after acceptance are as follows:

(1) The plea was accepted without substantial compliance with Sec. 711;

(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed;

(3) The sentence exceeds that specified in a plea agreement which had been previously accepted, or in a plea agreement on which the court had deferred its decision to accept or reject the agreement at the time the plea of guilty was entered;

(4) The plea resulted from the denial of effective assistance of counsel;

(5) There was no factual basis for the plea; or

(6) The plea either was not entered by a person authorized to act for a corporate defendant or was not subsequently ratified by a corporate defendant."

For the first time, on appeal, the defendant claims that there was no factual basis for his guilty plea.[4] Two different versions of the events were presented to the court. Under the state's version the defendant was shown to have been in actual possession of the cocaine under circumstances where the intent to sell could be inferred. The defendant not only agreed with the state's version in his conversation with the probation officer but also admitted upon inquiry by the court that he and his partner in crime intended to sell it. The defendant, both at the time of the plea and at the time of the sentence, disputed the state's account of the transaction. According to the defendant he was not doing any cutting. He was sitting on the bed next to what he knew to be cocaine while holding in his hand a bag of marijuana. Even on this version, when viewed in the light of the surrounding circumstances it would appear that the defendant's role involved more than being an innocent bed sitter and that therefore there might have been a basis for an inference of constructive possession. *State* v. *Gonski,* 155 Conn. 463, 467, 232 A.2d 483 (1967); *State* v. *Ferrone,* 97 Conn. 258, 262, 116 A. 336 (1922); but cf. *State* v. *Battle,* 170 Conn. 469, 474, 365 A.2d 1100 (1976). We need not decide, however, whether the defendant's possession was actual or constructive. So long as a factual basis

---

[4] Although the establishment of a factual basis for a guilty plea is required by our rules; Practice Book § 713; it is not at all clear that such proof is constitutionally mandated. Cf. *State* v. *Battle,* 170 Conn. 469, 473, 365 A.2d 1100 (1976); *Consiglio* v. *Warden,* 160 Conn. 151, 163, 276 A.2d 773 (1970); see also *Henderson* v. *Morgan,* 426 U.S. 637, 651, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976) (White, J., concurring); *Brady* v. *United States,* 397 U.S. 742, 748 n.6, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970); *Oaks* v. *Wainwright,* 445 F.2d 1062 (5th Cir. 1971). Giving the defendant the benefit of the doubt in this case, we have decided to consider his claim under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973).

for the guilty plea exists, it is not necessary that the defendant agree with it so long as faced with the state's version of the events the defendant made an "intelligent choice of alternative courses of action." *North Carolina* v. *Alford,* 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). The record amply supports the conclusion that such choice was made in this case.

There is no error.

In this opinion the other judges concurred.