## STATE OF CONNECTICUT *v.* DAVID W. LASHER
### (10844)

PETERS, HEALEY, PARSKEY, GRILLO and SPADA, Js.

Argued February 10—decision released May 31, 1983

*Michael Sucoll,* for the appellant (defendant).

*John H. Malone,* assistant state's attorney, with whom, on the brief, was *John M. Bailey,* state's attorney, for the appellee (state).

PARSKEY, J. This appeal presents the sole issue of whether the trial court erred by refusing to allow the defendant to withdraw his guilty plea prior to sentencing where it was alleged that the defendant and his attorney were mistaken as to the true nature of the plea bargain to which the defendant had agreed.

On March 7, 1980, the defendant, David Lasher, was arrested by a state police undercover unit of the Statewide Narcotics Task Force for conspiracy to sell marijuana in violation of General Statutes § 53a-48 and possession of a weapon in a motor vehicle in violation of General Statutes § 29-38.

On March 8, 1980, the defendant appeared in court and was advised of his rights before plea. More than a year later, on March 10, 1981, as a result of plea bargaining, the defendant agreed to plead guilty to the charge of conspiracy to sell marijuana.[1] During the plea

---

[1] During the March 10, 1981 plea taking the following colloquy occurred:

"Mr. Malone: David Lasher.

"Mr. Sucoll: Good morning.

"The Court: Good morning. This is here for what purpose today?

"Mr. Malone: Entry of a plea. This matter was removed from the jury list during the late 1980 session and continued for a court trial. There is a not guilty plea and election for trial to the court at the moment. Mr. Sucoll intends to enter a plea of guilty to conspiracy to sell marijuana. He'll have his client enter that plea and at the time of sentencing apply for the provisions of the drug treatment program under 19-485. It will be a felony plea and a presentence investigation.

"The Court: Give me some representation in that regard.

"Mr. Sucoll: That's correct, the prior pleas may be withdrawn, Mr. Lasher will plead guilty. And my understanding is a part of that program, now the Tasc program, and he will continue on that program for a period of twenty-four months. My understanding with accordance of the Statute 19-485 is any sentence imposed by the Court will be suspended during this period of time.

proceeding, the court inquired into the factual basis of the plea, and explained to the defendant that he was giving up his right against self-incrimination and his rights to confrontation and trial. The court further indicated the penalty for the offense charged and warned the defendant that the court was not bound by the state's recommendation. Additionally, the court inquired into the voluntariness of the plea and whether the defendant was under the influence of drugs or

"The Court: All right did he go to plea?

"Mr. Malone: No Sir. We ask he be put to plea on the first count.

"The Clerk: David Lasher you're charged with conspiracy to sell marijuana in violation of General Statutes 53a-48 how do you plead?

"The Defendant: Guilty.

"The Court: And you want a continuance to what date now?

"Mr. Sucoll: I don't know how long.

"Mr. Malone: A presentence investigation your Honor.

"The Court: This is a—

"Mr. Malone: The underlying section your Honor is 19-480b.

"The Court: 'B'?

"Mr. Malone: Yes sir. A seven year felony.

"The Court: That carries a penalty of not more than seven years, is that correct?

"Mr. Malone: Yes sir it's a seven year felony.

"The Court: And a thousand dollar fine. Is this a first offense here?

"Mr. Sucoll: Yes your Honor.

"Mr. Malone: Yes sir.

"Mr. Sucoll: He has no previous history.

"The Court: You're sure that your client is competent this morning to answer questions counsel?

"Mr. Sucoll: I believe so your Honor.

"The Court: Well, all right, Mr. Lasher you've entered a plea of guilty here to a felony and it carries a penalty of not more than seven years. And I ask you whether your plea is voluntary?

"The Defendant: Yes your Honor.

"The Court: Made of your own free will?

"The Defendant: Yes your Honor.

"The Court: Made without any promises, any inducements or any undue influence being used on you?

"The Defendant: No your Honor.

"The Court: Has there been any plea bargaining in this matter?

"Mr. Sucoll: We've discussed the matter your Honor.

"The Court: Has there been plea bargaining?

otherwise incompetent during the plea proceeding. The court found that there was a factual basis for the plea and that the plea was voluntary. Thereafter, the court entered a finding of guilty, ordered a presentence investigation and continued the case for sentencing.

The defendant's attorney again appeared before the court on May 22, 1981. At that time he informed the court that a dispute had arisen between himself and the state's attorney as to the terms of the presentence recommendation stated at the March 10, 1981 pro-

"Mr. Malone: Well, it's our intention to recommend a sentence of not less than two and a half and not more than five years. And it's our intention not to prosecute him on the second count your Honor. And not to oppose his application for drug dependency treatment under that statute.

"The Court: Is that part of some sort of an agreement between counsel and the defendant here?

"Mr. Sucoll: I would say that's accurate your Honor, yes. That he maintain or take part and complete that program which is offered by Tasc.

"The Court: Mr. Lasher has this been conveyed to you?

"Mr. Sucoll: I told him.

"The Defendant: You mean about the program?

"The Court: What we just finished talking about?

"The Defendant: Yes your Honor.

"The Court: That the state has indicated what it is going to recommend at the time of sentencing, and that it will not oppose your treatment under the drug program.

"The Defendant: I don't understand your Honor.

"The Court: Counsel will you tell him what the agreement is. (At this time the defense attorney and the defendant had a brief discussion off the record.)

"The Defendant: Yes your Honor, I understand that your Honor.

"The Court: Does that comport with what the State's Attorney just finished saying? You're in accord with that?

"The Defendant: Yes your Honor.

"The Court: And there has been no other plea bargaining other than what the State's Attorney just related?

"The Defendant: No your Honor."

(Parenthetically we note that the procedure adopted by the court during this colloquy was unfortunate. Better practice dictates that the court should have questioned the defendant about each aspect of the state's recommendation rather than adopt the state's recommendation by reference. See Practice Book § 711.)

ceeding. The court, therefore, granted counsel a one week extension to review the transcripts of the guilty plea.

The defendant was present for sentencing on May 29, 1981. On that date, prior to the imposition of sentence, the defendant's counsel, alleging that the terms of the plea agreement as they appeared in the March 10, 1981 transcript were materially different from what he had explained to the defendant, moved to withdraw the guilty plea.[2] The defendant's counsel at no time offered any testimony in support of his mo-

---

[2] The entire colloquy as it relates to the motion to withdraw was as follows:

"Mr. Malone: Number thirty-eight, David Lasher. This is down for sentencing today your Honor.

"The Court: Yes. Mr. Clerk does the record reflect the voluntariness of his plea?

"Mr. Sucoll: Your Honor if I might interject, I spoke to Mr. Malone, I've had an opportunity to review the transcript, and at this point I would wish to withdraw the plea.

"The Court: On what basis sir?

"Mr. Sucoll: And set it down—

"The Court: On what basis?

"Mr. Sucoll: The plea recommendation as I understood Mr. Malone was somewhat different than it came back in the transcript and somewhat different than I explained to Mr. Lasher. Therefore I would like to have the plea withdrawn and set down for trial.

"The Court: What was on the record is what your claim is?

"Mr. Sucoll: My claim your Honor as part of the plea recommendation, there would be two and a half to five suspended while Mr. Lasher completed a Tasc program for a period of two years in accordance with the relevant state statute. It has come back through the transcript, Mr. Malone would in fact recommend a two to five and would not oppose the recommendation, but would not support it. And therefore I believe it somewhat materially different, which I believe to be true, which I explained to my client. And on that basis we would wish to withdraw the plea.

"The Court: Mr. Malone.

"Mr. Malone: Your Honor the recorded transcript indicates that I said that at the time of sentencing, that was March 10th of this year, it's the state's intention to recommend a sentence of not less than two and a half and not more than five years. And our intention is not to prosecute him on the second count, which I intend to enter a nolle in the second count,

tion to withdraw the plea. The court, after hearing argument and reviewing the March 10, 1981 transcript, denied the defendant's motion. The court also denied the defendant's motion that he be committed to the "TASC"[3] drug dependency program and imposed a sentence of one and one-half to three years to serve. A nolle was entered on the weapons in a motor vehicle charge.

On appeal the defendant asserts that he should be allowed to withdraw his guilty plea on the basis of Practice Book § 721 (2). That section authorizes the withdrawal of a guilty plea upon proof that "[t]he plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed." The defendant claims that the record at the time of the plea (as set out in footnote 1) indicates that both the defendant and his attorney believed that, as part of the bargain, the defendant would be committed to the commissioner of mental health pursuant to General Statutes § 19-485 (now General Statutes § 21a-285) to allow him to continue participating in the "TASC" drug dependency program, with the sentence imposed suspended for the duration of the program, in return for his guilty plea. The defendant insists that this mistake of fact on the part of the defendant and his

weapons in a motor vehicle, and not to oppose the application for drug dependency treatment under the statute. The situation is quite clear at the time, I don't see that there is a ground to withdraw the plea.

"The Court: Well the record reflects that I made the appropriate inquiry as to his plea of guilty. May I see that transcript again.

"Mr. Malone: Yes sir.

"The Court: Well, the transcript here is pretty clear on what transpired on that day. The motion to withdraw the plea of guilty is denied. You may proceed counselor, I'll hear you now.

"Mr. Sucoll: I'd like to take an exception to that ruling your Honor.

"The Court: You may."

[3] See General Statutes § 21a-285.

attorney as to the terms of the plea agreement persisted despite the statement by the assistant state's attorney of his intention to (1) recommend a sentence of not less than two and one-half years and not more than five years; (2) not to prosecute on a second count; and (3) not to oppose the defendant's application for drug dependency treatment.

In essence, the defendant claims that this guilty plea was not voluntary and intelligent because both the defendant and his attorney were laboring under a subjective misunderstanding of the plea agreement.[4] It is to be underscored that the defendant does not allege a broken prosecutorial promise. See *Santobello* v. *New York,* 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971).

In order for a plea of guilty to be constitutionally valid, the record must affirmatively disclose that the defendant entered the plea voluntarily and intelligently. *Boykin* v. *Alabama,* 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *State* v. *Godek,* 182 Conn. 353, 356, 438 A.2d 114 (1980), cert. denied, 450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981).

"Before a guilty plea is accepted a defendant may withdraw it as a matter of right. Practice Book, 1978, § 720. After a guilty plea is accepted but before the imposition of sentence the court is obligated to permit withdrawal upon proof of one of the grounds in § 721. An evidentiary hearing is not required if the record of the plea proceeding and other information in the court file conclusively establishes that the motion is without merit. See *Fontaine* v. *United States,* 411 U.S. 213, 215,

---

[4] We do not reach the question of under what circumstances, if any, a subjective misunderstanding on the part of the defendant may serve to invalidate a guilty plea.

93 S. Ct. 1461, 36 L. Ed. 2d 169 (1973)." (Footnote omitted.) *State* v. *Torres,* 182 Conn. 176, 185, 438 A.2d 46 (1980).

The burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty. *Blue* v. *Robinson,* 173 Conn. 360, 374, 377 A.2d 1108 (1977); *State* v. *Slater,* 169 Conn. 38, 46, 362 A.2d 499 (1975). In considering whether to hold an evidentiary hearing on a motion to withdraw a guilty plea the court may disregard any allegations of fact, whether contained in the motion or made in an offer of proof, which are either conclusory, vague or oblique. *State* v. *Torres,* supra, 185. Such allegations are discountenanced. *State* v. *Deboben,* 187 Conn. 469, 474, 446 A.2d 828 (1982). To warrant consideration, the defendant must allege and provide facts which justify permitting him to withdraw his plea under § 721.[5] Id.

An examination of the record of the March 10, 1981 guilty plea reveals that the court personally addressed the defendant and explained to him the penalties for the crime charged. The court explained to the defendant that he had the right to confront witnesses against

[5] "[Practice Book] Sec. 721. ——GROUNDS

"The grounds for allowing the defendant to withdraw his plea of guilty after acceptance are as follows:

"(1) The plea was accepted without substantial compliance with Sec. 711;

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed;

"(3) The sentence exceeds that specified in a plea agreement which had been previously accepted, or in a plea agreement on which the court had deferred its decision to accept or reject the agreement at the time the plea of guilty was entered;

"(4) The plea resulted from the denial of effective assistance of counsel;

"(5) There was no factual basis for the plea; or

"(6) The plea either was not entered by a person authorized to act for a corporate defendant or was not subsequently ratified by a corporate defendant."

him, the right to trial and the right to avoid self-incrimination. The defendant responded affirmatively when he was asked if he understood and wished to give up these rights. The court questioned the defendant about the voluntariness of his plea. The defendant indicated that the plea was voluntary. The court further inquired as to the factual basis of the plea and the defendant admitted being part of the drug transaction. At the close of the canvass the court found that the plea was voluntary with a factual basis and thus entered a finding of guilty. These conclusions must stand unless they are legally and logically inconsistent with the facts found. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980); see *State* v. *Slater,* supra, 45–46. Here we cannot make such a finding.

Defense counsel, in support of his oral motion to withdraw the guilty plea, offered nothing other than the conclusory statement that the plea agreement as it appeared in the March 10 transcript was "somewhat materially different" than what he had explained to the defendant. The defendant was present, yet his testimony as to what defense counsel had related to him was not presented to the court. Indeed, defense counsel did not request an evidentiary hearing or make an offer of proof. The defendant's unsupported conclusory claims in light of our statements in *Torres* and *Deboben,* supra, cannot, in the presence of a facially valid plea of guilty, serve as sufficient proof to obligate the withdrawal of the defendant's plea.

The question that remains is whether the defendant should now be afforded an opportunity, through a belated evidentiary hearing, to make a factual showing that he failed to understand that the sentence actually imposed would be or could be imposed. This record furnishes some basis for such an inquiry, since the colloquy at the time of the taking of the plea, on

March 10, 1981, disclosed that the defendant's attorney and the state's attorney differed in their understanding of the terms of the plea bargain. Usually it is appropriate to infer that defense counsel, having been asked by the court to explain a proposed plea bargain to the defendant, will do so accurately. Such an inference is less plausible in this case, when no one, with the possible exception of the defendant who announced his confusion, recognized that there was a problem or took steps to alleviate it. Nor is it clear, on this record, that conclusive effect should be given to the defendant's statement, after consultation with his counsel, that he was in accord "with what the state's attorney has just finished saying."

We reject this route for two reasons, one relating to its lack of timeliness and the other relating to the inherent problems of proof that it would generate. In order to ascertain what uncertainties existed, either objectively or subjectively, testimony would be required from at least the attorney for the defense and arguably the state's attorney as well. Such inquiries are better pursued, as we have held in cases concerning alleged inadequacy of counsel, by habeas corpus proceedings. *State* v. *Mason,* 186 Conn. 574, 578–79, 442 A.2d 1335 (1982).

There is no error.

In this opinion the other judges concurred.