KENT OPPEL *v.* RAYMOND M. LOPES, COMMISSIONER OF CORRECTION
(12643)

PETERS, C. J., HEALEY, SHEA, DANNEHY and CALLAHAN, Js.

Argued April 3—decision released July 22, 1986

*Andrew B. Bowman,* for the appellant (petitioner).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Domenick Galluzzo,* assistant state's attorney, for the appellee (respondent).

CALLAHAN, J. This is an appeal from a decision denying a petition for a writ of habeas corpus in which the petitioner, Kent Oppel, challenged the constitutional validity of his *Alford* plea[1] to murder in violation of General Statutes § 53a-54a (a).[2] The petitioner claims that the habeas court, *Smith, J.,* erred in not vacating his plea because the trial court, *Testo, J.,* failed (1) to explain or apprise the petitioner of the element of intent to cause the death, thus violating the due process clause of the fourteenth amendment; and (2) to comply with Practice Book § 711 (1) by failing to advise the petitioner of the nature of the charge to which he pleaded guilty. We find no error.

The underlying facts of the crime leading to the guilty plea are as follows: At about 5 a.m. on September 19, 1980, the petitioner, who conducted a silkscreen business from his home in Monroe, was in his workshop when his wife came home. An argument arose between

---

[1] *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] General Statutes § 53a-54a (a) provides: "Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

them concerning the manner in which cars were parked in a parking area at the residence. The petitioner claims that, as a result of the dispute, his wife picked up a pipe and struck him. In response, the petitioner picked up a hammer and repeatedly struck his wife on the head with it. He then took a cord from his workbench and strangled her. Thereafter he sought the assistance of a worker on the premises to help him dispose of his wife's body. The two men dug a grave beneath a patio that was under construction and buried the wife's body. They then cleaned up the area and disposed of her car. Approximately a month later, the Monroe police, acting pursuant to a search warrant, excavated the patio and located the victim's body.

On March 8, 1983, the petitioner, who was charged with the murder of his wife, appeared before the trial court to change his prior plea of not guilty to a plea of guilty pursuant to *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). On April 22, 1983, the petitioner was sentenced to a term of not less than seventeen and one-half years to life, which sentence he is presently serving. On March 16, 1984, the petitioner filed a petition for a writ of habeas corpus attacking the validity of his plea. After the petition was denied, certification was granted for an appeal to this court. General Statutes § 52-470 (b).

The petitioner's primary claim is that the court's failure to explain the critical element of intent contained in General Statutes § 53a-54a (a) constitutes a due process violation requiring the vacation of his guilty plea and sentence. We disagree.

We note at the outset that "[c]ollateral attacks on judgments are not favored. Every presumption favors the jurisdiction of the court and the regularity of its processes." *State* v. *Wright,* 198 Conn. 273, 283, 506, A.2d 556 (1986) citing *Monroe* v. *Monroe,* 177 Conn.

173, 177, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979). A guilty plea, however, that is not both voluntary and knowing is in violation of due process and thus void. *McCarthy* v. *United States,* 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969); *State* v. *Lopez,* 197 Conn. 337, 341, 497 A.2d 390 (1985). For a guilty plea to be truly voluntary, the defendant must understand the law in relation to the facts. *McCarthy* v. *United States,* supra, 466. Moreover, since a defendant waives several constitutional rights when he elects to plead guilty to a criminal offense, the choice of a guilty plea is of profound significance. *Boykin* v. *Alabama,* 395 U. S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *State* v. *Childree,* 189 Conn. 114, 120, 454 A.2d 1274 (1983). In pleading guilty, a defendant waives his privilege against compulsory self-incrimination, his right to trial by jury and his right to confront his accusers. *Boykin* v. *Alabama,* supra; *State* v. *Lopez,* supra; *State* v. *Childree,* supra; see Practice Book § 711 (5). A guilty plea, therefore, is constitutionally valid only if the record affirmatively discloses that the plea was entered voluntarily and intelligently. *Boykin* v. *Alabama,* supra, 242; *State* v. *Lopez,* supra; *State* v. *Marra,* 174 Conn. 338, 340, 387 A.2d 550 (1978); *Blue* v. *Robinson,* 173 Conn. 360, 373, 377 A.2d 1108 (1977).

The petitioner's primary claim is largely premised on the United States Supreme Court decision in *Henderson* v. *Morgan,* 426 U.S. 637, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976). In *Henderson,* the defendant challenged the voluntariness of his guilty plea on the ground that he had not been informed that intent to cause the death of his victim was an element of the offense. On remand from the federal appellate court, the district court held a hearing and found that *neither counsel nor the court* had advised the defendant of the element of intent and it therefore found the plea

involuntary. The Supreme Court reasoned that the plea could not have been voluntary in the sense that it constituted an intelligent admission that he had committed the offense unless the defendant received "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." Id., 645.

The petitioner acknowledges the distinction between this case and *Henderson,* that is, the explicit finding in the *Henderson* case that neither defense counsel nor the trial court had explained the intent element to the accused. There is no such finding in this case. He argues, however, that there is no justification nor does it enhance the integrity of the judicial system to presume that defense counsel adequately and accurately explained the elements of the offense. We disagree. The Supreme Court indicated in *Henderson* that the record normally contains an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. *Henderson* v. *Morgan,* supra, 644. The court also indicated that, even without such an express representation, it may be appropriate to presume that in most cases defense counsel has routinely explained the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit. Id. The trial judge in this case specifically asked the petitioner whether his attorney had explained the essential elements of the crime with which he was charged and the petitioner responded in the affirmative.[3] It is also noteworthy that the offense to which the defendant pleaded in *Henderson* was not specifi-

---

[3] "The Court: Do you understand the offense of murder with which you are being charged?

"Mr. Oppel: Yes, your Honor.

"The Court: I assume your attorney has explained the essential elements of this crime; is that correct?

"Mr. Oppel: Yes, your Honor."

cally charged in the indictment in that case but was a lesser included offense included in the indictment. Unlike the present case, where the indictment alleged that the defendant "with the intent to cause death of Robin Oppel, did strangle" the victim, the elements in *Henderson* had not been set forth in any document which had been read to the accused or to which he had access.[4] Id. See *McCarthy* v. *United States,* supra, 467–68 n.20.

In *State* v. *Childree,* supra, on which the petitioner also relies, we recognized that *Henderson* v. *Morgan,* supra, did not announce a per se rule that notice of the true nature of a charge always requires a description of every element of the offense. There we held, however, that the trial court did not adequately explain a critical element of the crime of larceny to the defendant; *State* v. *Childree,* supra, 123; and that the circumstances did not warrant the presumption that defense counsel explained the elements of the charge. Id. In fact, the record there gave no indication of such an explanation. Here, while the intent to cause the death of the victim is a critical element of murder since it distinguishes murder from manslaughter; compare General Statutes § 53a–54a with § 53a–55; see *State* v. *Childree,* supra; the record supports the presumption that defense counsel explained the elements of the offense because the petitioner, at the time of the plea canvass, acknowledged that defense counsel had explained the essential elements of the crime to him. Moreover, in *hildree* the defendant was charged with both robbery

---

[4] We note that, although the record does not indicate whether or not the indictment was read to the petitioner in open court, the trial court did ask the petitioner whether he had discussed the crime as charged in the indictment.

"The Court: Have you discussed with your attorney . . . the crime of murder that has been charged in the indictment against you and your plea of guilty thereto?

"Mr. Oppel: Yes, your Honor.

and larceny. We noted that, because the distinction between the two offenses is a subtle one, the court was "all the more responsible for guaranteeing that counsel and the defendant [had] explained the consequences of pleading guilty to both offenses." *State* v. *Childree,* supra, 124. In this case the petitioner was charged only with the crime of murder. This charge did not encompass such subtleties as to require a detailed explanation of the offense by the trial court once it had ascertained that counsel had explained the elements to the petitioner.

We find that the judge's inquiry concerning the defendant's understanding of the elements of murder was sufficient to overcome this collateral attack on his conviction. Unlike the cases relied on by the petitioner, the record in this case adequately discloses that the petitioner possessed an "understanding of the law in relation to the facts." *McCarthy* v. *United States,* supra, 466; see *State* v. *Evans,* 5 Conn. App. 113, 118, 497 A.2d 73 (1985); cf. *Finley* v. *Manson,* 1 Conn. App. 260, 470 A.2d 1234 (1984).

The petitioner next asserts that the trial court, in accepting his guilty plea, did not inform him adequately of the nature of the charge against him, as required by Practice Book § 711 (1).[5] Specifically, he asserts that

---

[5] "[Practice Book] Sec. 711. —— ——ADVICE TO DEFENDANT

"The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he has the right to be tried by a jury or a judge and that at that trial he has the right to

the trial court's failure to provide adequate advice on the intent element of General Statutes § 53a-54a (a) or to explain his *Alford* plea is a violation of the Practice Book requirements. Further, the petitioner argues that the trial court failed to ascertain whether there was a strong factual basis for the *Alford* plea. Because we have already concluded that it is appropriate under the circumstances of this case to presume that defense counsel explained the intent element of § 53a-54a (a), we will only address the petitioner's claims concerning his *Alford* plea.

Practice Book § 711 was designed to ensure that guilty pleas are made voluntarily and with full knowledge of the waiver of specific constitutional rights. *State v. Lopez,* 197 Conn. 337, 345, 497 A.2d 390 (1985); *State v. Suggs,* 194 Conn. 223, 226, 478 A.2d 1008 (1984); *State v. Godek,* 182 Conn. 353, 357, 438 A.2d 114 (1980), cert. denied, 450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981). Subsection (1) requires that the judicial authority not accept the plea without determining that the defendant fully understands the nature of the charge to which the plea is offered. The petitioner argues that the trial court's explanation of the *Alford* doctrine was inadequate under this section and therefore his plea was not knowingly, intelligently and voluntarily entered. We disagree.

First, in the context of a habeas corpus attack on a conviction, we do not interpret Practice Book § 711 (1) to require a detailed explanation of every aspect of a defendant's plea under *North Carolina v. Alford,* supra.

---

the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself."

We note that the petitioner does not raise any other claim concerning the trial court's plea canvass under Practice Book § 711. The record indicates that the trial court thoroughly inquired as to the petitioner's waiver of constitutional rights when entering a guilty plea and the nature of the sentence on a charge of murder. See *Boykin v. Alabama,* 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *State v. Lopez,* 197 Conn. 337, 497 A.2d 390 (1985).

In discharging its obligations under Practice Book § 711, the court's inquiry "need not be so restricted that the '[j]udge [must] mount the bench with a script in his hand'; *State* v. *James,* 197 Conn. 358, 363, 497 A.2d 402 (1985) citing *Sappington* v. *United States,* 468 F.2d 1378, 1380 (8th Cir. 1972). Many problems would be avoided, however, if the court used "not a script . . . but . . . some sort of checklist, as a prompter, so that whatever form the dialogue takes, all of the necessary lines will be delivered." Id., 363–364 citing *United States* v. *Fels,* 599 F.2d 142, 149 n.6 (7th Cir. 1979).

The record in this case indicates that the trial judge briefly explained the *Alford* plea to the petitioner and also ascertained that defense counsel had explained the plea to him.[6] See *Henderson* v. *Morgan,* supra; *State* v. *Childree,* supra, 123. We conclude that the trial court adequately determined that the petitioner understood the nature of the charge against him and the significance of a plea pursuant to *North Carolina* v. *Alford,* supra, before accepting his guilty plea.

Finally, the petitioner claims that the trial court failed to ascertain whether there was a strong factual basis for the defendant's *Alford* plea. We have recognized that the acceptance of an *Alford* plea must be premised on a sufficient factual basis. See, e.g., *State* v. *Deboben,* 187 Conn. 469, 475–76, 446 A.2d 828 (1982); *Blue* v. *Robinson,* supra, 378. The trial court did not make a specific finding that there was a factual basis for the defendant's plea, nor was it required to do so by Prac-

---

[6] "The Court: And he has explained to you, I would assume, your guilty plea under the *Alford* Doctrine; is that correct?

"Mr. Oppel: Yes, your Honor.

"The Court: Do you understand that doctrine?

"Mr. Oppel: I do.

"The Court: The doctrine, meaning quickly in a thumbnail, that the evidence seems to be that if you went to trial you probably would be found guilty. Did he explain that to you?

"Mr. Oppel: Thoroughly, your Honor."

tice Book § 713.[7] Such a finding is implicit in the trial court's acceptance of the plea. We have reviewed the record and conclude that there were detailed and exhaustive facts which provided an adequate factual basis for acceptance of the petitioner's plea.

We find no error.

In this opinion the other justices concurred.

---

[7] "[Practice Book] Sec. 713. —— ——FACTUAL BASIS

"The judicial authority shall not accept a plea of guilty unless he is satisfied that there is a factual basis for the plea."