# STATE OF CONNECTICUT *v.* LUIS ALICEA
## (14000)

Heiman, Spear and Stoughton, Js.

Argued December 7, 1995—officially released April 16, 1996

*G. Douglas Nash*, public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, *Dennis J. O'Connor*, senior assistant state's attorney, and *Steven Preleski*, assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgments of conviction, rendered following his guilty plea, of failure to appear in the first degree[1] in violation of General Statutes § 53a-172 (a).[2] On appeal, the defendant claims that the trial court improperly denied his motion to withdraw his guilty plea to the charge of failure to appear in the first degree. He asserts that the action of the trial court was improper because the record fails to reflect that he understood the elements of the crime with which he stood charged. We agree with the defendant and reverse the judgments of the trial court.

The record and the transcripts of the proceedings before the trial court reveal the following relevant facts. The defendant was charged with a number of criminal offenses in three separate cases. In case CR93-438257, he was charged with robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), conspiracy to commit robbery in the first degree in violation of

---

[1] We note that the defendant appeals from the judgments rendered in three separate cases, CR93-438257, CR93-447568 and CR93-438693. All three cases were disposed of as a result of one plea bargain.

[2] General Statutes § 53a-172 (a) provides: "A person is guilty of failure to appear in the first degree when, while charged with the commission of a felony and while out on bail or released under other procedure of law, he wilfully fails to appear when legally called according to the terms of his bail bond or promise to appear."

General Statutes §§ 53a-48 and 53a-134 (a) (4), and failure to appear in the first degree in violation of General Statutes § 53a-172 (a). In case CR93-447568, he was charged with attempted robbery in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-134 (a) (4), attempted assault in the second degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-60 (a) (2), reckless endangerment in the first degree in violation of General Statutes § 53a-63 and threatening in violation of General Statutes § 53a-62. In case CR93-438693, he was charged with sale of narcotics as an accessory in violation of General Statutes §§ 53a-8 and 21a-278 (b), conspiracy to sell narcotics in violation of General Statutes §§ 53a-48 and 21a-278 (b) and failure to appear in the first degree in violation of General Statutes § 53a-172 (a). The defendant entered pleas of not guilty to all of the charges.

The defendant negotiated a plea bargain with the state concerning all three cases. As part of the plea bargain, the defendant agreed to withdraw all prior not guilty pleas, to enter a plea of guilty to the charge of failure to appear in the first degree in case CR93-438257 and to the charges of assault in the third degree[3] and threatening in case CR93-447568. The state agreed to nolle[4] the remaining charges in case CR93-438257, to file a substitute information in case CR93-447568 reflecting the charges to which the defendant would plead guilty in that case, and to nolle all of the charges in case CR93-438693.

On May 12, 1994, the defendant appeared before the trial court to withdraw his prior pleas and to enter his guilty pleas pursuant to the plea bargain. The state filed a substitute information in case CR93-447568 charging the defendant with assault in the third degree and

---

[3] General Statutes § 53a-61.

[4] See Practice Book §§ 725 through 727.

threatening. The defendant entered his plea of guilty to the charge of failure to appear in the first degree in case CR93-438257 and to the charges of assault in the third degree and threatening in case CR93-447568.[5]

After the defendant entered his guilty plea, the state recited the factual basis for the charge of failure to appear in the first degree in case CR93-438257:

"[Assistant State's Attorney]: As to the failure to appear count, Your Honor, he was arrested for robbery first degree and conspiracy to commit robbery first degree, obviously felonies. He was released on bond. The cases were continued until June 16, 1993—the case was continued along with a drug case which is docket [CR93-438693] to the same day, June 16, 1993, at which time the defendant failed to appear."

The state then proceeded to recite the factual basis for the charges of assault in the third degree and threatening in case CR93-447568.[6] Thereafter, the trial court canvassed the defendant regarding his guilty pleas. The pertinent part of that canvass is as follows.

"The Court: Very well. . . . [H]ow old are you, sir?

"The Defendant: Twenty-two, ma'am.

"The Court: And how far through school have you been, to what grade?

"The Defendant: I went to senior year.

"The Court: You graduated?

"The Defendant: No, ma'am.

---

[5] The guilty plea in case CR93-447568 was entered under the *Alford* doctrine. See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[6] We do not set forth the state's recital of these facts because they are not in issue.

"The Court: Where were you born?

"The Defendant: Hartford.

"The Court: Are you presently under the influence of alcohol, drugs or medication of any kind?

"The Defendant: No, ma'am.

"The Court: Have you had enough time to discuss this case with your two lawyers, [Ronald] Johnson and [Yvonne] Rodriguez-Schack?[7]

"The Defendant: Yes.

"The Court: Did they discuss with you the evidence the state claims it has against you?

"The Defendant: Yes, ma'am.

"The Court: *Did they discuss with you the evidence the state would have to have in order to get a conviction at trial beyond a reasonable doubt? That's called the elements of the offense, and it is that evidence which the prosecutor just recited.*

"The Defendant: Yes, ma'am.

"The Court: Are you satisfied with the representation you've received from your lawyers?

"The Defendant: Yes, ma'am." (Emphasis added.)[8]

---

[7] Attorney Ronald S. Johnson represented the defendant in case CR93-438257 and Attorney Yvonne Rodriguez-Schack represented the defendant in cases CR93-447568 and CR93-438693.

[8] The trial court continued by advising the defendant that he did not have to plead guilty and that by doing so he was giving up numerous constitutional rights, including the right to a trial with the assistance of a lawyer, the right to cross-examine the witnesses against him and the right not to incriminate himself. The defendant understood that he was giving up these rights. In addition, the trial court explained to the defendant the maximum penalties for the crimes to which he was pleading guilty, and the defendant indicated that he understood the trial court's explanation. Furthermore, after questioning from the trial court, the defendant indicated that he was pleading guilty of his own free will. The trial court reminded the defendant that the recommended sentence for the crimes in issue was a total of seven years,

The trial court accepted the defendant's guilty plea, and found that it was made knowingly, voluntarily and with the assistance of competent counsel, and that there was a factual basis for the plea. Consequently, the trial court entered a finding of guilty on all counts to which the defendant pleaded guilty. The trial court scheduled sentencing for July 15, 1994.

On July 15, 1994, the defendant, accompanied by counsel, appeared at the sentencing hearing with a letter setting forth the following: "Your Honor: (1) After a final review of this entire case, I have decided to withdraw my guilty plea. (2) I did not understand the nature of the charges, and I thought the sentence would be seven [years] with the right to argue for less. (3) My lawyer told me what to say when I pled guilty because I was tired of coming back and forth to court. If Your Honor is going to deny my request to withdraw, I would like an exception for the record and appeal papers and a sentence review application. Thank you very much." The trial court treated the letter as a motion to withdraw the plea and questioned the defendant about it. The defendant indicated that the letter applied only to the charge of failure to appear in the first degree and not to the charges of assault in the third degree and threatening.[9] The trial court denied the defendant's motion

consisting of five years for failure to appear in the first degree, one year for assault in the third degree and one year for threatening. The trial court also explained to the defendant that it was ordering a presentence investigation report. Finally, with respect to the failure to appear charge, the defendant admitted that he did not appear in court on January 16, 1993, as explained earlier by the state, and that he engaged in the conduct constituting assault and threatening, as the state claimed.

[9] We note that an additional colloquy took place immediately after the defendant presented his letter to the court and indicated that the letter applied only to the charge of failure to appear in the first degree. The court addressed the defendant in the following manner:

"The Court: . . . Now, you're saying that you don't like the five years [for the failure to appear charge] that Mr. Johnson negotiated for you? Is that what you're saying?

"The Defendant: Yes, ma'am.

"The Court: And why do you think you're entitled to withdraw your plea, just because you don't like the sentence, after you agreed to it, and pled to it?

to withdraw the plea and sentenced him to five years for failure to appear in the first degree, one year for assault in the third degree and one year for threatening.

The defendant claims that the trial court improperly denied his motion to withdraw his plea of guilty to the charge of failure to appear in the first degree. The defendant posits that the record does not reveal that the defendant understood the nature of the charge,

---

"The Defendant: Right."

The defendant's answers to this line of questioning by the trial court do not serve to restrict the defendant from claiming on appeal that he did not understand the nature of the charge to which he entered a guilty plea. The trial court failed to address the defendant's concern that he did not understand the nature of the charge, which, pursuant to Practice Book § 721, is a permissible ground for the withdrawal of a guilty plea. See *State* v. *Elijah,* 34 Conn. App. 595, 596, 642 A.2d 735, cert. denied, 231 Conn. 907, 648 A.2d 157 (1994). "The grounds for allowing the defendant to withdraw his plea of guilty after acceptance are as follows . . . (2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed . . . ." Practice Book § 721. Because the defendant filed a motion claiming that he did not understand the nature of the charge, he took the proper first step in adequately preserving his right to appeal that ground. "[T]he proper procedure for raising a claim that a guilty plea was not knowingly and voluntarily made is to make that claim in the trial court in the first instance." *State* v. *Childree,* 189 Conn. 114, 119, 454 A.2d 1274 (1983). In addition, the defendant has provided us with an adequate record on appeal to enable us to review this claim. See Practice Book § 4061. It is important to note, however, as the state points out in its brief, that in *State* v. *Deboben,* 187 Conn. 469, 474, 446 A.2d 828 (1982), our Supreme Court declined to review a defendant's claim that he was entitled to withdraw his guilty plea, which was based on the assertions that "he was confused" and that "he was told what to say by his lawyer." The court reasoned that such assertions were "conclusory, vague, and oblique," and thus not sufficient reasons for withdrawal under Practice Book § 721. The defendant in *Deboben,* as a third argument in support of his claim, also asserted that "there was no factual basis for the plea." *State* v. *Deboben,* supra, 474. What the state fails to point out, however, is that the Supreme Court determined that this latter claim was in fact reviewable, as it stated an adequate reason for withdrawal under Practice Book § 721. Id., 474–75. Because the claim in *Deboben* was raised for the first time on appeal, the court decided to review the claim under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). *State* v. *Deboben,* supra, 474–75.

including the element of the offense requiring that to be convicted he must have *wilfully* failed to appear on the date in question. The defendant asserts that the trial court, by accepting the guilty plea under these circumstances, failed in its constitutional obligation and in its obligations under the rules of practice. We agree.

We first examine the fundamental principles of law that govern our resolution of this claim. " 'A guilty plea is itself a conviction; *Boykin* v. *Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *Paulsen* v. *Manson*, 203 Conn. 484, 489, 525 A.2d 1315 (1987); and a defendant, when entering such a plea, waives several constitutional rights. *Boykin* v. *Alabama*, supra, 243; *McCarthy* v. *United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969); *Paulsen* v. *Manson*, supra [489]; *State* v. *Gilnite*, [202 Conn. 369, 381, 521 A.2d 547 (1987)]. First is the privilege against self-incrimination, second is the right to a jury trial, and third is the right to confront one's accusers. *Boykin* v. *Alabama*, supra [234]; *McCarthy* v. *United States*, supra [466]; *State* v. *Gilnite*, supra, 381 n.14. To ensure that a defendant is accorded due process, [therefore] the plea must be voluntarily and intelligently entered. *Boykin* v. *Alabama*, supra, 243 n.5; *McCarthy* v. *United States*, supra [466]; *Paulsen* v. *Manson*, supra [489]; *Oppel* v. *Lopes*, 200 Conn. 553, 556, 512 A.2d 888 (1986); *State* v. *Badgett*, [200 Conn. 412, 418, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986)]; *State* v. *Lopez*, 197 Conn. 337, 341–42, 497 A.2d 390 (1985).' *State* v. *Wright*, 207 Conn. 276, 287, 542 A.2d 299 (1988).

"Because it cannot be presumed from a silent record that the decision to plead guilty was the product of the defendant's 'full understanding of what the plea connotes and of its consequences'; *Boykin* v. *Alabama*, supra, 395 U.S. 243–44; 'the federal constitution requires that the record of the plea canvass indicate the voluntariness of any waiver of the three core constitutional

rights [implicated by the guilty plea].' *State* v. *Badgett,* supra, 200 Conn. 418. To ensure that this constitutional requirement is satisfied, the trial court is obliged to comply with the dictates of Practice Book §§ 711 and 712,[10] which enumerate the responsibilities of the court in conducting the plea canvass. However, because the 'determination as to whether a plea has been knowingly and voluntarily entered entails an examination of all of the relevant circumstances'; *State* v. *Wright,* supra, 207 Conn. 287; the plea may satisfy constitutional requirements even in the absence of 'literal compliance with the prophylactic safeguards of Practice Book §§ 711 and 712.' *State* v. *Badgett,* supra, 418." *State* v. *Domian,* 235 Conn. 679, 686–87, 668 A.2d 1333 (1996).

In examining the specific claim that the defendant did not understand the nature of the charge to which he entered a guilty plea, we are also guided by the

---

[10] Practice Book § 711 provides: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

Practice Book § 712 provides: "The judicial authority shall not accept a plea of guilty or nolo contendere without first determining, by addressing the defendant personally in open court, that the plea is voluntary and is not the result of force or threats or of promises apart from a plea agreement. The judicial authority shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the prosecuting authority and the defendant or his counsel."

following additional precepts. "A plea of guilty cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts. *State* v. *Collins*, 176 Conn. 7, 9, 404 A.2d 871 (1978). [That principle is] in accord with [the requirement of] Practice Book § 711 (1) et seq."; *State* v. *Wideman*, 38 Conn. App. 581, 585, 663 A.2d 409, cert. denied, 235 Conn. 907, 665 A.2d 906 (1995); that provides that the defendant must understand the nature of the charge to which the plea is offered. "Substantial compliance with Practice Book § 711 does *not* require that the trial court read the statute to the defendant if there are other reasons to believe that the defendant understands the statute. *State* v. *Badgett*, 220 Conn. 6, 14, 595 A.2d 851 (1991)." (Emphasis added.) *State* v. *Wideman*, supra, 586. Indeed, our Supreme Court, relying upon *Henderson* v. *Morgan*, 426 U.S. 637, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976), has recognized that "the record normally contains an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. *Henderson* v. *Morgan*, supra, 644." *Oppel* v. *Lopes*, supra, 200 Conn. 557. Further, relying on *Henderson*, our Supreme Court has also acknowledged that "even without such an express representation, it may be appropriate to presume that in most cases defense counsel has routinely explained the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit. [*Henderson* v. *Morgan*, supra, 644]." *Oppel* v. *Lopes*, supra, 200 Conn. 557.

Although it may be appropriate to presume, pursuant to *Henderson*, that defense counsel has explained the nature of the offense to the defendant, we do not *automatically* invoke this presumption merely because the defendant has appeared in court with counsel to enter a plea of guilty. In deciding whether it is appropriate to

presume that defense counsel has adequately explained the charge in question to the defendant, we must examine the circumstances of the case to determine if those circumstances warrant the invocation of the presumption. See *State* v. *Childree*, 189 Conn. 114, 123, 454 A.2d 1274 (1983). Thus, we must look to whether the record indicates that such an explanation has been given. See id., 124; see also *Oppel* v. *Lopes*, supra, 200 Conn. 558; *State* v. *Wideman*, supra, 38 Conn. App. 586 n.9; *State* v. *Hackett*, 16 Conn. App. 601, 603, 548 A.2d 16 (1988). "The presumption that defense counsel has explained the elements of the offense to the defendant arises only in limited circumstances where the record clearly supports that presumption." *State* v. *Elijah*, 34 Conn. App. 595, 599, 642 A.2d 735, cert. denied, 231 Conn. 907, 648 A.2d 157 (1994). We will not simply "presume that counsel has effectively informed his client of the elements of the offense when the record does not affirmatively disclose an adequate basis for that conclusion. 'Our rules of practice prescribe a detailed procedure for acceptance of a guilty plea . . . . Practice Book §§ 712–713. Where the record fails to disclose substantial compliance with this procedure, to cure the omission by resorting to a presumption that counsel has performed a duty of the court would be inconsistent with the principle that the necessary elements for an effective guilty plea must appear in the record. *Boykin* v. *Alabama*, [supra, 242]; *State* v. *Childree*, supra, 120.' *State* v. *Marino*, 190 Conn. 639, 646–47 n.8, 462 A.2d 1021 (1983)." *State* v. *Evans*, 5 Conn. App. 113, 117, 497 A.2d 73 (1985).

An example of where the record supports the presumption that defense counsel explained the elements of the offense to the defendant is where the defendant, "at the time of the plea canvass, acknowledged that defense counsel had explained the essential elements of the crime to him." *Oppel* v. *Lopes*, supra, 200 Conn.

558; see also *State* v. *Brown*, 19 Conn. App. 640, 645 n.2, 563 A.2d 1379, cert. denied, 212 Conn. 821, 565 A.2d 540 (1989).

The present case, however, is dissimilar to those cases where the trial court properly determined that defense counsel had adequately explained the elements of the offense to the defendant. Here, the record does not support the presumption that such an explanation took place. The transcript reveals that the trial court failed to determine whether the defendant understood the nature of the charge of failure to appear in the first degree and canvassed the defendant in such a manner that he most likely *misunderstood* the nature of the offense.

Our analysis of the plea canvass reveals that, although the state began by reciting the factual basis for the charge of failure to appear in the first degree, it failed to state that the defendant *wilfully* failed to appear. Wilfulness is an essential element of the crime of failure to appear in the first degree.[11] Thus, the state's narration of the underlying facts in the presence of the defendant, to the extent that such a narration could have served the purpose of notifying the defendant of the nature of the charge; see *State* v. *Wideman*, supra, 38 Conn. App. 587; failed to set forth the elements of the crime properly. In order for a guilty plea to be valid, the accused must necessarily understand both "[t]he nature of the charge to which the plea is offered"; Practice Book § 711; as well as the "factual basis for the plea." Practice Book § 713. As we have stated, the defendant must understand the law in relation to the facts. *State* v. *Wideman*, supra, 585; see also *McCarthy* v. *United States*, supra, 394 U.S. 466.

Following the state's recitation of the facts, the trial court asked the defendant if he had discussed the failure

---

[11] See footnote 1.

to appear charge with his attorney. Although the defendant answered affirmatively, such a discussion is not sufficient to invoke the presumption that defense counsel has adequately explained the elements of the crime to the accused. *Paulsen* v. *Manson*, supra, 203 Conn. 493–94 and n.3. "Although the [defendant] averred upon entering his plea that he had an opportunity to discuss the offense with his attorney, we decline to assume that the [defendant] was thereby referring to an explanation by his counsel of the elements of [the crime charged]." Id., 493–94.

Finally, the trial court attempted, although unsuccessfully, to determine whether the defendant had discussed with his attorneys the elements of the offenses with which he had been charged. The trial court inquired: "Did they discuss with you the evidence the state would have to have in order to get a conviction at trial beyond a reasonable doubt?" Such a question, however, does not serve properly to extract from a defendant whether he understands the nature of the charge. In *State* v. *Elijah*, supra, 34 Conn. App. 598–99, we held that this type of question is "insufficient to support the presumption that counsel explained the *elements* of the charged offenses to the defendant." (Emphasis in original.)[12] Furthermore, after asking the defendant whether he and defense counsel had discussed the evidence that the state would need for a conviction, the trial court stated: "That's called the elements of the offense, and it is that evidence which the prosecutor just recited." In the first instance, this statement was incorrect because it equated the *elements of the offense* with both the *evidence* required for a conviction and the *evidence* recited by the state.

---

[12] In *State* v. *Elijah*, supra, 34 Conn. App. 598–99, the trial court asked the defendant, " '[Did your attorney] explain those charges to you so you understand, generally, what the state would have to prove to convict you of the charge?' " The defendant answered affirmatively. Id.

Second, the statement was misleading because it equated the evidence that the state would have to produce to secure a conviction at trial with the facts, or *evidence,* recited by the state. The factual allegations recited by the state, even if proven, would *not* have been sufficient to support a conviction of failure to appear in the first degree because those allegations did not demonstrate that the defendant *wilfully* failed to appear.[13] Thus, the trial court's statement indicated to the defendant that the factual allegations recited by the state were sufficient to show that the defendant committed the crime of failure to appear in the first degree, an indication that simply is not correct.

We conclude that the trial court's plea canvass failed to demonstrate that the defendant understood the essential elements of the crime of failure to appear in the first degree and that, therefore, the plea of guilty to that charge was not knowingly and voluntarily entered. Thus, the trial court improperly denied the defendant's motion to withdraw his plea of guilty to the charge of failure to appear in the first degree on the ground that he did not understand the nature of the charge.

The judgments are reversed and the case is remanded with direction to allow the defendant to withdraw his guilty plea and for further proceedings in accordance with law.[14]

In this opinion the other judges concurred.

---

[13] See footnote 2.

[14] Because the defendant's plea of guilty to the charge of failure to appear in the first degree in case CR93-438257 was entered as part of a single plea bargain disposing of three different cases with an assortment of charges, our conclusion here necessarily unravels the entire plea bargain.