STATE OF CONNECTICUT *v.* THYATIRA U. DRAKEFORD
(AC 18400)

Lavery, Landau and Spear, Js.

Argued March 23—officially released July 20, 1999

*M. Donald Cardwell*, for the appellant (defendant).

*Nancy L. Chupak*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Michael Gailor*, assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, J. The defendant, Thyatira U. Drakeford, appeals from the judgment of conviction, rendered after her guilty plea, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[1] On appeal, the defendant claims that the trial court abused its discretion in denying her motion to withdraw her guilty plea. We affirm the judgment of the trial court.

The following facts are necessary for our review of this appeal. On April 21, 1995, the defendant and the victim, Cherry Rodriquez, were patrons at Club Mirage in Rocky Hill. Prior to that date, while they were in high school together, the defendant and the victim had argued. The animosity between the two women had lingered. While they were at Club Mirage, the defendant and the victim encountered one another and exchanged words. During the course of their exchange, the defendant slashed the victim's face with a sharp object, causing her serious injury. The defendant fled the scene but was later apprehended and confessed to having injured

---

[1] General Statutes § 53a-59 provides in relevant part: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . .

"(b) Assault in the first degree is a class B felony provided (1) any person found guilty under subdivision (1) of subsection (a) shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court . . . ."

the victim. The defendant pleaded not guilty to the information.

Prior to trial, the defendant and the state entered into a plea agreement pursuant to which the defendant would plead guilty to assault in the first degree in return for a sentence of twenty years, suspended after eight years, with five years probation and the opportunity to argue for less prison time. On December 8, 1997, the trial court canvassed the defendant regarding her plea.[2]

[2] The following colloquy took place between the trial court and the defendant during her plea canvass.

"The Court: All right. And you're employed at the present time?

"The Defendant: Yes.

"The Court: Where are you working?

"The Defendant: At the U.S. Health Care.

"The Court: And what are you doing there?

"The Defendant: I'm a claims/benefit specialist.

"The Court: How long have you been employed in that capacity?

"The Defendant: For almost six months.

"The Court: All right. How far did you go in school, ma'am?

"The Defendant: I graduated high school.

"The Court: All right. Are you presently under the influence of any alcohol, drugs or medication as you stand before me today?

"The Defendant: No.

"The Court: Have you had enough time to discuss what you're doing today with your lawyer?

"The Defendant: Yes.

"The Court: Are you satisfied with the legal advice that you've received?

"The Defendant: Yes.

"The Court: Are you entering your plea of guilty here voluntarily and of your own free will?

"The Defendant: Yes.

"The Court: Are you being forced or threatened in any way by any person to cause you to enter this plea today?

"The Defendant: No.

\* \* \*

"The Court: All right. Do you understand by pleading guilty that you're giving up certain rights. You're giving up your right to continue to plead not guilty and to require that the state prove your guilt beyond a reasonable doubt at a trial before a judge or a jury while you're represented by your lawyer. You're giving up your right to confront and cross-examine witnesses, the right to present any kind of defenses that you might have had to this and also the right not to be a witness against yourself. Do you understand you're giving up those various rights here today by pleading guilty?

During the course of the canvass, the defendant told the trial court that she understood that she was waiving her constitutional rights and that she understood the

"The Defendant: Yes.

"The Court: The state would have had to have proven that with the intent to cause serious physical injury to another person that you caused such injury to such person by means of a dangerous instrument. Do you understand that's what they'd have to prove beyond a reasonable doubt?

"The Defendant: Yes.

"The Court: That is punishable by a sentence a maximum of twenty years, but there is a minimum sentence of five years that cannot be suspended. Do you understand that?

"The Defendant: Yes.

"The Court: Do you understand that although that is the maximum, twenty years under this indicated sentence from the court is obviously being somewhat limited. The most that you can get under this agreement at the time of sentencing is twenty years suspended after you serve eight years in prison followed by five years probation with whatever conditions I might want to put on the probation. Your lawyer, obviously, is going to be arguing for less. But once again, there is a five year minimum mandatory on that. So really what we're arguing over is between five to eight years. Do you understand that?

"The Defendant: Yes.

"The Court: Do you have any questions at all about that?

"The Defendant: No.

"The Court: All right. You heard a summary of the facts. This was a straight guilty plea. Do you agree essentially with those facts or substantially with those facts?

"The Defendant: No.

"The Court: All right. Well, what is it you disagree with? I mean are you disagreeing that you actually caused the injury to her?

"The Defendant: No, I am not disagree[ing] that I caused the injury to her. I'm disagreeing that she made it seem like she doesn't—she didn't do anything to me. I was only protecting myself. That's why I did it. I'm not saying that I didn't do it because I did do it. I'm saying that I did it because I was acting in self-defense.

"The Court: Well, see, self-defense would be a total defense to being convicted on this. I mean I just told you what the state would have to prove. That the state would have to prove that you intended to cause serious physical injury to her and that you caused it by means of a dangerous instrument.

"The Defendant: I understand that. But also my statement that I did not make is going to incriminate me, so I know I cannot win. So I'm going to accept the—

"The Court: It sounds like—

"The Defendant:—twenty after eight.

charges against her. When asked if she agreed with the facts related to the charge, the defendant admitted to having slashed the victim's face, but claimed that she

"The Court:—it sounds like a part of an *Alford* plea in a way. It sounds like she's saying that she's pleading guilty, she does not agree with everything that the state claims because she feels she did this in some kind of a self-defense. But based on the nature of the proof and the statements she made to the police, she feels that she's better off pleading guilty under this arrangement, rather than going to trial, because she feels if she went to trial she probably would be found guilty and would probably receive a more severe sentence. Is that—that basically it?

"The Defendant: That's exactly right.

"The Court: Well, I think it should be accepted under the *Alford.*

"[Defense Counsel]: Could it be accepted—

"The Court: All right.

"[Defense Counsel]:—under the *Alford* doctrine?

"The Court: It can be accepted under that. Do you understand that we're going to continue this for sentencing? And they're going to order a pre-sentence report. And you're going to be interviewed by a probation officer. The court is going to have some more material at the time of sentencing. But you can't come back here on that day with [defense counsel], by yourself or with another lawyer and decide to change your mind and now you want a trial. That can only be done for a valid legal reason and with the permission of the court. Do you understand that?

"The Defendant: Yes.

"The Court: Obviously, if I felt the sentence wasn't adequate and you should receive a greater sentence than what I've indicated, I would allow you to withdraw your plea and you could still have a trial. Do you understand that?

"The Defendant: Yes.

"The Court: And if you're not a citizen of the United States, do you realize that conviction can have the consequences of deportation, exclusion from admission to the United States or denial of naturalization. Do you understand that?

"The Defendant: Yes.

"The Court: Have you understood the questions I've asked you, ma'am?

"The Defendant: Yes.

"The Court: Do you have any questions at all you want to ask me or anything you want to ask your lawyer before I accept your plea?

"The Defendant: No.

"The Court: Either lawyer know any reason why the guilty plea should not be accepted or anything they feel the court should place on the record?

"[Assistant State's Attorney]: No, sir.

"[Defense Counsel]: No.

"The Court: The plea is found to be voluntary and understandably made with the assistance of competent counsel. There's a basis for it. I will accept it. A finding of guilty is made."

had acted in self-defense. The defendant told the trial court that she was pleading guilty because of certain statements that she had given to the police and because she did not think she would prevail at trial. The trial court told the defendant that self-defense was a total defense to the charge of assault in the first degree. The defendant also said that she did not want to proceed to trial. The trial court indicated that the defendant's plea could be accepted under the *Alford* doctrine.[3] The defendant affirmatively responded that she understood all of the rights she was waiving by pleading under the *Alford* doctrine. The trial court accepted the defendant's guilty plea, set a date for sentencing and informed her that she could not come back to court with another attorney or by herself and withdraw the plea unless she had a valid legal reason to do so.

Prior to her being sentenced, the defendant retained private counsel,[4] who filed a motion to withdraw her guilty plea. In her motion, the defendant claimed that her plea was accepted without substantial compliance with Practice Book § 39-19[5] because she did not fully

---

[3] *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[4] The defendant was represented by a public defender in the prior proceedings.

[5] Practice Book § 39-19 provides: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

understand the nature of her right to persist in her plea of not guilty and her right to be tried by a jury or a judge. The defendant also claimed that her plea was not voluntary because she believed that no effective defense could be offered on her behalf and that her only alternative was to relinquish her right to trial and to enter a guilty plea. Also, the defendant claimed that the trial court did not ask whether her willingness to plead guilty resulted from prior discussions between the prosecutor and the defendant or her counsel[6] as required by Practice Book § 39-20.[7]

The trial court held a hearing on the defendant's motion to withdraw on March 11, 1998. After hearing testimony from the defendant and her brother, Jamie Scott, and arguments of counsel, the trial court denied the defendant's motion. During cross-examination by the state, the defendant admitted that she had discussed self-defense with her counsel prior to making her plea.[8]

---

[6] The defendant did not raise this issue on appeal.

[7] Practice Book § 39-20 provides: "The judicial authority shall not accept a plea of guilty or nolo contendere without first determining, by addressing the defendant personally in open court, that the plea is voluntary and is not the result of force or threats or of promises apart from a plea agreement. The judicial authority shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the prosecuting authority and the defendant or his or her counsel."

[8] The following exchange took place during the defendant's cross-examination.

"[Assistant State's Attorney]: Didn't you tell [the assistant public defender] up front that you had a defense of self-defense?

"[The Defendant]: Yes.

"[Assistant State's Attorney]: Okay. So you talked to him about that, right?

"[The Defendant]: Yes.

"[Assistant State's Attorney]: Okay. And you talked to him about that in 1996, right?

"[The Defendant]: I don't understand what you're saying.

"[Assistant State's Attorney]: You talked to him about your claim of self-defense in 1996?

"[The Defendant]: Yes.

"[Assistant State's Attorney]: Okay. So he knew and you told him what the witnesses were, right?

"[The Defendant]: I don't remember.

The court then imposed a sentence of fifteen years, suspended after five years, with five years of probation. The defendant appealed, claiming the trial court abused its discretion in denying her motion to withdraw because she did not understand the law in relation to the facts and, therefore, her plea was not voluntarily and intelligently made. The defendant argues that the

"[Assistant State's Attorney]: Okay. You told him who was at the club with you, didn't you?

"[The Defendant]: He knew it was me and my cousin. As far as other witnesses, I don't remember.

"[Assistant State's Attorney]: Okay. You don't remember if you told him about anybody else?

"[The Defendant]: I don't remember.

"[Assistant State's Attorney]: Okay. But you told him at least you and your cousin were there?

"[The Defendant]: Yes.

"[Assistant State's Attorney]: Okay. And you told him that it was your claim that you had injured this woman in the action of—in the act of self-defense, right?

"[The Defendant]: Yes.

"[Assistant State's Attorney]: Okay. So he knew all that right up front?

"[The Defendant]: Yes.

"[Assistant State's Attorney]: Okay. Now, when you pleaded guilty on December 8, 1997, you told the court that you didn't agree with the facts, correct? . . .

"[Assistant State's Attorney]: You told the court that you didn't agree with the facts read by the prosecutor, right?

"[The Defendant]: Yes.

"[Assistant State's Attorney]: You told the court that you were acting in self-defense, right?

"[The Defendant]: Yes.

"[Assistant's State's Attorney]: Okay. And the court indicated to you that self-defense would be a total defense to be convicted of the crime of assault in the first degree, didn't it?

"[The Defendant]: Yes, but he didn't elaborate on that.

"[Assistant State's Attorney]: And in response to that you indicated that, 'I understand that. But also a statement that I did not make is going to incriminate me so I know I cannot win.' Do you remember making that statement?

"[The Defendant]: I was—I was repeating what was told to me by [the assistant public defender].

"[Assistant State's Attorney]: Do you remember making that statement in court?

"[The Defendant]: Yes."

record is devoid of evidence that the trial court or her attorney informed her of the elements of self-defense.

"A guilty plea, once accepted, may be withdrawn only with the permission of the court. *State* v. *Rish,* 17 Conn. App. 447, 451, 553 A.2d 1145, cert. denied, 211 Conn. 802, 559 A.2d 1137, cert. denied, 493 U.S. 818, 110 S. Ct. 72, 107 L. Ed. 2d 38 (1989). The court is required to permit the withdrawal of a guilty plea upon proof of any ground set forth in Practice Book § 721 [now § 39-27]. *State* v. *Collins,* 207 Conn. 590, 597, 542 A.2d 1131 (1988); *State* v. *Lasher,* 190 Conn. 259, 265, 460 A.2d 970 (1983). Whether such proof is made is a question for the court in its sound discretion, and a denial of permission to withdraw is reversible only if that discretion has been abused. *State* v. *Crenshaw,* [210 Conn. 304, 308–309, 554 A.2d 1074 (1989)]; *Szarwak* v. *Warden,* 167 Conn. 10, 23, 355 A.2d 49 (1974)." *State* v. *Morant,* 20 Conn. App. 630, 633, 569 A.2d 1140, cert. denied, 215 Conn. 818, 576 A.2d 547 (1990).

"It is axiomatic that unless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable. *State* v. *Childree,* 189 Conn. 114, 119, 454 A.2d 1274 (1983). By entering a guilty plea, the defendant waives his constitutional rights to a jury trial and to confront his accusers as well as his privilege against self-incrimination. *Boykin* v. *Alabama,* 395 U.S. 288, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *State* v. *Wright,* 207 Conn. 276, 542 A.2d 299 (1988). It is well settled that the record must affirmatively disclose that the defendant's choice was made intelligently and voluntarily. *State* v. *Childree,* supra, 120." (Internal quotation marks omitted.) *State* v. *Ramos,* 23 Conn. App. 1, 3–4, 579 A.2d 560 (1990).

The essence of the defendant's claim on appeal is that her guilty plea was not made voluntarily and intelligently because neither the trial court nor her attorney

informed her of the elements of self-defense and, therefore, she did not understand the law in relation to the facts. The defendant, however, has not cited any law to support her contention that the trial court must explain the elements of a defense to a criminal defendant during its canvass of the defendant prior to accepting a guilty plea. The defendant also has not brought to our attention any facts in the record that would lead us to conclude that her trial counsel did not explain the elements of self-defense to her. Indeed, the record indicates that she discussed self-defense with her counsel. See footnote 8. When the trial court told her that self-defense was a total defense to the charge, she said that she understood. In response to the trial court's canvass, the defendant indicated that she had had enough time to discuss her case with her attorney, a public defender, and that she was satisfied with the legal advice she received. As the defendant correctly noted in her brief to this court, the trial court may presume that defense counsel has explained the nature of the charges to the defendant. *State* v. *Alicea*, 41 Conn. App. 47, 56, 674 A.2d 468 (1996). Nothing presented to us by the defendant leads us to conclude that the trial court improperly relied on that presumption.

On the basis of our review of the record, we conclude that the trial court fulfilled the requirements of Practice Book §§ 39-19 and 39-20 when it accepted the defendant's guilty plea pursuant to the *Alford* doctrine. The trial court canvassed the defendant in open court. The defendant said that her plea was voluntary and not the result of force or threats. The trial court explained to the defendant the nature of the charge of assault in the first degree, the maximum twenty year sentence and the mandatory minimum five year sentence required by the statute, that the defendant had the right to plead not guilty or to persist in that plea, the right to be tried

by a jury or a judge, the right to confront and cross-examine witnesses and the right not to incriminate herself. In addition, the trial court explained that the defendant had the right to have the state prove her guilt beyond a reasonable doubt and to present a defense of any kind and that self-defense was a total defense to the charge. When asked, the defendant said that she understood all of the questions that were put to her and that she had no questions.

At the hearing on her motion to withdraw her guilty plea, the defendant testified that she, in fact, had lied about understanding what was going on during the canvass because she was scared and confused. The trial court found the defendant's testimony to be less than credible. The defendant is a high school graduate, who has worked as a claims representative for one of the major insurance companies in this state. During the canvass, the defendant had no trouble speaking up when asked if she agreed with the facts as the trial court represented them. She told the court that she had, in fact, assaulted the victim but that she had done so in self-defense. The trial court found the defendant to be the type of person who understood the questions put to her and who would have spoken up if she felt that she was forced, threatened or dissatisfied.

The defendant claims that the trial court failed to relate the law with respect to self-defense to the facts of this case. Such explanations are to be given by defense counsel. See *State* v. *Torres*, 182 Conn. 176, 184, 438 A.2d 46 (1980). The trial court is not to assume the role of defense counsel unless it is constitutionally required to do so. See *State* v. *Gilnite*, 202 Conn. 369, 383–84, 521 A.2d 547 (1987); *State* v. *Brown*, 18 Conn. App. 716, 721, 559 A.2d 1179 (1989). The language "an understanding of the law in relation to the facts" pertains to the elements of the crime with which the defendant is charged, not the elements of a defense to the crime.

*State* v. *Wideman*, 38 Conn. App. 581, 585–87, 663 A.2d 409 (1995); see *State* v. *Childree*, supra, 189 Conn. 119–21.

We conclude, therefore, that the trial court properly canvassed the defendant and did not abuse its discretion in denying the defendant's motion to withdraw her guilty plea, which the trial court found to be voluntarily and intelligently made.

The judgment is affirmed.

In this opinion the other judges concurred.