[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
This is a habeas matter. The petitioner, James R. Silva, by petition filed September 22, 1999, alleged illegal confinement by virtue of ineffective assistance of counsel.
An amended petition was filed on February 3, 1998. A hearing on the amended petition opened on January 20, 1999 and continued on May 12, 1999, when the parties rested and the matter was continued for briefing. CT Page 14417
 II
The amended petition is in six counts. The third and fourth counts, having to do with pretrial incarceration time credits, were withdrawn without prejudice on January 20, 1999 and the parties proceeded on the remaining four counts. The first count alleges defects in the petitioner's plea canvass, which rendered his plea involuntary. The second count alleges ineffective assistance of counsel, citing numerous acts or omissions of counsel. The fifth count alleges that the petitioner was never informed of his right to appeal his conviction, thus depriving him of his statutory right to appeal his sentence and his constitutional right to due process of law. The sixth count alleges that the petitioner was not informed of his right to sentence review, following his guilty plea, thus depriving him of his statutory right to sentence review and his constitutional right to due process of law.
 III
The petitioner was charged in the Judicial District of New London with Murder, in violation of General Statutes, Section53a-54a, Carrying a Pistol Without a Permit, in violation of General Statutes, Section 29-35a and Threatening, in violation of General Statutes, Section 53a-62, in connection with the death by gunshot, on April 17, 1994, of Albert W. Goss, III.
Goss and the petitioner were friends. By April 17, 1994, a dispute had arisen between them concerning a woman. On the evening of April 17th the petitioner approached the Goss residence on foot, accompanied by several companions, including Jose Melendez and Oswaldo Figueroa, brothers. The petitioner had indicated to his companions that he intended to fight Goss and asked them to act as "backup," should anyone seek to intervene on Goss' behalf. The petitioner displayed a handgun, which he carried in a holster tucked in the waistband of his trousers but indicated he intended to restrict any fighting to fisticuffs. As the group arrived at the Goss home, the deceased came out to meet them. An argument ensued between the petitioner and the deceased, during which the petitioner threw or dropped the handgun to the ground. Goss reentered his home and returned moments later. A shot was fired and Goss retreated, mortally wounded.
On June 7, 1994, a hearing in probable cause was held. CT Page 14418 Melendez and Figueroa testifed they had seen the petitioner shoot the deceased. The father of the deceased testified that he had emerged from the home to find his son, dying. The father testified he'd asked his son who had shot him and his son had replied, "Jimmy". At the conclusion of the hearing probable cause was found to charge the petitioner with murder.
On May 17, 1995, after discussions with his mother and his attorney, the petitioner entered a plea of guilty, under the Alford doctrine, to a single count of murder, in violation of General Statutes, Section 53a-54a. The plea was made pursuant to a plea agreement, under which the state recommended a term of imprisonment of thirty years with the petitioner reserving the right to argue for a lesser term. On June 28, 1995, the petitioner was sentenced to a term of thirty years imprisonment and the remaining weapons charge was nolled as agreed.
 IV
In his first count, the petitioner alleges that his plea was rendered involuntary by reason of a defective plea canvass. "It is axiomatic that unless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable, State v. Childree, 189 Conn. 114, 119,454, A.2d 1274 (1983). By entering a guilty plea, the defendant waives his constitutional rights to a jury trial and to confront his accusers, as well as his privilege against self-incrimination.Boykin v. Alabama, 395 U.S. 288, 89 S.Ct. 1709, 23 L.Ed.2d 274
(1969); State v. Wright, 207 Conn. 276, 542 A.2d 299 (1988). It is well settled that the record must affirmatively disclose that defendant's choice was made intelligently and voluntarily. Statev. Childree, supra, 120." (Internal quotation marks omitted). Statev. Drakeford, 54 Conn. App. 240, 248, quoting from State v. Ramos,23 Conn. App. 1, 3, 579 A.2d 560 (1990).
 V
With regard to the plea canvass, the petitioner's first claim is that it was defective in that the trial judge failed to explain correctly the elements of the offense of murder. The petitioner asserts that Finley v. Manson, 1 Conn. App. 260, is controlling here. Finley is easily distinguishable from the instant matter. In Finley, the court noted that the record showed no explanation of the charge by the trial court nor a representation by defense counsel that the nature of the offense CT Page 14419 had been explained to the accused, Finley v. Manson, supra, at 262. A review of the record in the instant matter shows that the court asked the petitioner, "Did you discuss with your attorney what this crime consists of? In other words, if your case went to trial what the State would have to do to prove — what evidence the State would have to introduce to prove that you were guilty of this offense? Did you talk that over with him?" The petitioner answered, "Yes, sir". (Petitioner's Exhibit B, Transcript, May 17, 1995 hearing, p. 6). The court went on to explain, ". . . under our statute murder is the intentional killing of another human being, in other words, causing the death of someone and I doing it intentionally." (Exhibit B, p. 11).
The court finds that the trial judge correctly stated the elements of the offense charged and that the petitioner has failed to establish, by a fair preponderance of the evidence, that the trial court's explanation was deficient so as to render the petitioner's plea involuntary.
Next, the petitioner claims his plea was rendered involuntary by reason of the trial court's failure to continue the May 17, 1995 plea hearing because of the petitioner's "agitated mental state" on May 17th.
While the court does not doubt that the petitioner was under considerable stress on May 17, 1995, given the difficulties of his situation, the petitioner has failed to establish, by a fair preponderance of the evidence, that this mental or emotional condition on May 17, 1995 was such as to render his plea unknowing or involuntary. First, there was no request to the court to continue the hearing. Second, the petitioner's responses were coherent and his demeanor was such as to persuade the judge that the petitioner was not under the influence of any substance (Exhibit B, p. 8). No one present stated any concern that the petitioner's mental state might impair his ability to plead knowingly and voluntarily. Third, the decision to take the plea offer was rational, given the State's evidence and the petitioner's maximum exposure. Fourth, the court finds the medical records introduced at the habeas hearing inconclusive. It appears from these records that on May 12, 1995, in prison, the petitioner was banging his head against a wall and threatening to hurt himself. The petitioner characterizes this event as an "unsuccessful suicide attempt." No expert medical testimony was offered to aid the court in interpreting said medical records. Left to its own devices, the court notes that medical notes CT Page 14420 variously referred to this incident as "acting out"; that the petitioner had indicated he had to act out to be heard; that he didn't appear psychotic; that the petitioner stated he had done what he did just to get attention and that he wanted to see a doctor. Whatever the level of his distress on May 12, 1995, the petitioner has failed to establish, by a fair preponderance of the evidence, that his mental and emotional state on May 17, 1995 was such as to render his guilty plea unknowing or involuntary.
 VI
The petitioner, in his second count, alleges ineffective assistance of counsel. A habeas petitioner, claiming a deprivation of his right to effective assistance of counsel has the burden of showing that (1) the performance of his counsel was "deficient" in that it was outside the range of reasonable professional assistance of a competent trial or appellate lawyer and (2) that the deficient performance "prejudiced" the petitioner such that there is a reasonable probability that, but for the deficient performance of counsel, the result would have been different, Strickland v. Washington, 466 U.S. 668, 687-94,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . .", Id., at 689.
A criminal defendant, moreover, is entitled to adequate and effective assistance of counsel at all critical stages of legal proceedings, Id., at 686. Pretrial negotiation implicating the decision whether to plead guilty is a critical stage in criminal proceedings, Colson v. Smith, 438 F.2d 1075, 1078 (5th Circuit, 1971).
The Supreme Court of the United States has determined that the Strickland test applies to claims arising from the plea negotiation process, while modifying the "prejudice" prong, as applied to pleas; a defendant is required to show that, "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial". Hill v. Lockhart, 474 U.S. 52, 57-8.
The petitioner first claims that trial counsel did not investigate a possible defense of intoxication. Defense counsel has a duty to make reasonable investigations, Johnson v.CT Page 14421Commissioner of Correction, 36 Conn. App. 695, 705 (citation omitted). However, counsel need not personally investigate every evidentiary possibility before choosing a defense and developing it, Ostolaza v. Warden, 26 Conn. App. 758, 765 (internal quotation marks, citations omitted). The reasonableness of an attorney's investigative decisions often depends critically on the information supplied by his client, Johnson v. Commissioner ofCorrection, supra, at 705 (quotation marks, citations omitted). The petitioner's claim from beginning to end of his trial counsel's representation was, I didn't shoot [the deceased]. In the circumstances, trial counsel's failure to investigate a possible defense of intoxication did not constitute performance below the range of "competence displayed by lawyers with ordinary training and skill in criminal law." Valeriano v. Bronson,209 Conn. 75, 85-86.
In his petition, the petitioner claimed trial counsel failed to advise him of the affirmative defense of extreme emotional distress; failed to investigate and assert the affirmative defense of self-defense; failed to advise the petitioner that a knife had been found "at the location of the shooting"; failed to advise the petitioner regarding the test results of gun residue. The petitioner failed to show prejudice with regard to any of these claims.
With regard to these claims, the court finds: In light of the petitioner's adamant insistence that he did not shoot the victim, it was reasonable that trial counsel not pursue a defense of self-defense. (See Scillieri Testimony, Transcript, May 12, 1999 hearing, p. 89.) Trial counsel reasonably believed that a defense of extreme emotional distress was not viable. (See Scillieri Testimony, Transcript, May 12, 1999, p. 89.) Trial counsel reasonably concluded that the discovery of a knife at some distance from the crime scene was not helpful to the petitioner. (See Scillieri Testimony Transcript, May 12, 1999, pp. 107-109.) The results of gun residue tests were in fact known to the petitioner. (See Petitioner's Testimony, Transcript, May 12, 1999, pp. 43-44.) The court notes these claims were not briefed and may be deemed abandoned.
In his brief the petitioner goes on to make a general allegation that trial counsel "failed to make a reasonable investigation" with no specifics offered as to what such investigation might uncover. In fact, trial counsel's testimony at the habeas hearing, which the court finds credible, evidences CT Page 14422 significant investigative effort by trial counsel (see, e.g., Transcript, May 12, 1999 hearing, pp. 85-87). Petitioner also claims that trial counsel's lack of preparation "forestalled him from offering any witnesses at the sentencing hearing". The court is left to speculate as to who these witnesses might be, and what would be their testimony. The petitioner has failed to establish this claim.
Next, the petitioner claims that trial counsel never explained to him the elements of the offense charged, murder. All we are given is the petitioner's naked assertion of this claim. This assertion is in apparent contradiction to the petitioner's answer to the judge's questions at the plea hearing, cited above. The court notes that, during the habeas hearing, the petitioner did not question his trial counsel regarding this claim. The petitioner has failed to overcome the presumption that, with regard to this claim, counsel's performance fell within the wide range of reasonable professional assistance.
The petitioner claims that trial counsel advised him that he could receive the death penalty if convicted. Specifically, the petitioner asserts his mother told him that trial counsel had told her, "if you plead guilty you can get the death penalty." The court finds this claim not credible. The court finds credible trial counsel's habeas testimony that he advised the petitioner that he had a maximum exposure of sixty years, a minimum of twenty five years and that he, trial counsel estimated a sentence of thirty five to forty years if the petitioner was convicted after trial (Transcript, May 12, 1999 hearing, pp. 90-92).
The petitioner claims that trial counsel assured him that if he took the offer of thirty years, he'd be out on parole in fifteen years. The petitioner has failed to establish this claim by a fair preponderance of the evidence.
The petitioner has failed to establish, by a fair preponderance of the evidence, that trial counsel's representation of the petitioner was deficient such that there is a reasonable probability that but for his deficient performance the result would have been different and that but for counsel's errors, the petitioner would have insisted on going to trial.
 VII
The plaintiff also claims he was never advised of his right CT Page 14423 to appeal his conviction, nor of his right to apply for sentence review. At the habeas hearing trial counsel testified he had no recollection of discussing appeal rights with the petitioner nor did trial counsel think that was something counsel would have considered in the circumstances (Transcript, May 12, 1999 hearing, p. 109). Trial counsel had no specific recollection of discussing sentence review with the petitioner, although counsel testified it was his customary practice to do so.
A review of the record reveals that neither at the plea hearing nor at the sentencing hearing was the petitioner advised of his right to appeal his conviction nor of his right to apply for sentence review.
A defendant's statutory right to appeal is fundamental and must be "jealously protected" (citations omitted), Barlow v.Lopes, 201 Conn. 103, 108-9. A waiver is an intentional relinquishment or abandonment of a known right or privilege" (citations omitted); and the right of appeal should not be considered as having been waived or abandoned except where it is established that such is the case (citation omitted), Staton v.Warden, 175 Conn. 328, 334-5. The record must affirmatively disclose that the petitioner knowingly, intelligently and voluntarily waived his right to appeal. A reviewing court should determine whether a defendant was fully apprised of his right to appeal and the consequences of the abandonment of that right; and whether he was advised concerning the possible merits of an appeal (citations omitted), Barlow v. Lopes supra, at 109-10.
Here, the record does not disclose that the petitioner was advised, by the court or by his counsel, of his right to appeal his conviction. The fact that the petitioner entered his plea pursuant to a plea agreement does not support a finding of knowing and voluntary waiver. Trial counsel's habeas testimony that at the time of plea and sentencing he felt petitioner had no valid grounds for appeal does not justify a failure to advise the petitioner of his appellate rights. The court concludes that the principles enunciated in Bunkley v. Commission of Correction,222 Conn. 444, 459, fn. 16, are applicable here. Failure to advise the petitioner of his right to appeal constitutes prejudice per se. The court finds that the defendant has established, by a fair preponderance of the evidence, that was deprived of his statutory right to take an appeal of his conviction.
Similarly, the record affords no basis on which to conclude CT Page 14424 that the petitioner was advised as to his statutory right to apply for sentence review. There is nothing in the record to suggest that, upon imposition of the petitioner's sentence he received notice of his right to request sentence review as mandated by General Statutes, Section 51-195. The court finds that the petitioner has established, by a fair preponderance of the evidence, that he was deprived of his statutory right to request sentence review. See State v. Anderson, 220 Conn. 400,407.
After a determination in a habeas corpus proceeding that a petitioner has been deprived of his right of appeal, the trial court is authorized to allow a late appeal, despite any rule or statute to the contrary, Haynes v. Bronson, 13 Conn. App. 708,711. In accordance with its findings, the court will order that the petitioner's right to appeal his conviction be reinstated. The court concludes that the same considerations apply with regard to sentence review and will order that the petitioner's right to request sentence review be reinstated.
However, neither the failure to advise the petitioner of his appellate rights nor the failure to advise the petitioner of his right to request sentence review require the court to vacate the petitioner's sentence. Neither failure, taken singly nor in combination, resulted in such a significant deficit in the petitioner's comprehension of the consequences of his guilty plea as to invalidate it, D'Amico v. Manson, 193 Conn. 144, 154. The court is not persuaded that, but for the failures to advise the petitioner of his appellate rights and his right to apply for sentence review, he would have elected to go to trial rather than plead guilty.
 VIII
The court finds that the petitioner has failed to establish, by a fair preponderance of the evidence, that defects in his plea canvass rendered his plea involuntary, nor that trial counsel rendered ineffective assistance such that there is a reasonable probability that, but for the deficient performance of counsel, the result would have been different. Counts one and two of the petition are, accordingly, dismissed.
The court finds that the petitioner has established, by a fair preponderance of the evidence, that he was deprived of his statutory right to appeal his conviction and his statutory right CT Page 14425 to apply for sentence review.
Accordingly, judgment may enter in favor of the petitioner as to counts five and six only, and the court orders that the petitioner's right to appeal his conviction and his right to apply for sentence review are reinstated, the appeal period and application for review period to run from the date of the petitioner's receipt of this decision.
By the Court,
Downey, J.